George McArthur, as Committee, etc., Respondent, *v.*
Henry Gordon et al., Appellants.

| 126 | 597 |
| 140 | 119 |
| 126 | 597 |
| 166 | 351 |

As a general rule, under an obligation by one person to support and maintain another, where no place is specified, the beneficiary may live wherever he chooses, provided his choice does not involve needless expense.

*It seems* this rule is subject to exceptions in cases where there is great inadequacy of consideration, where family arrangements are made involving the support of some of its members by others who have been accustomed to live together, or where the circumstances of the case and the language of the instrument indicate an intent that support shall be furnished in a particular manner, at a particular place, or by particular persons.

McD. executed a will, by which for the declared purpose of giving her son L., who was her only child and heir, a good and sufficient support, she gave all her property to defendant G., her executor, in trust to receive the rents and profits, and apply them to the use of L. during life, with remainder to G. The only property of any material value owned by the testatrix was a farm, upon which she and her son, who was a lunatic, resided. She thereafter executed a deed of the farm to G., the consideration stated being "one dollar and other valuable considerations." G. was an aged clergyman, in nowise related to McD., living at a distance from her farm. L., while not violent or dangerous, was unmanageable. McD. continued to live upon the farm with L. until her death, and thereafter he remained in possession. G., shortly after the death of McD., executed and caused to be recorded an instrument under seal, which stated that because of the conveyance he considered himself bound to appropriate to the comfortable support of L. during life, all the rents of the farm, less necessary expenses, or if it should be sold, then that such support should be the first lien thereon, the obligations resting upon him however to be limited to the rents or, in case of sale, to the interest on the purchase-money. *Held*, that said instrument constituted a valid and enforceable trust imposing upon its creator the obligations and duties of a trustee; that said trust was irrevocable and could not be limited or affected by subsequent acts or contracts of the trustee with a stranger; that the trust was not limited to support to be furnished L. on the premises, but constituted a general obligation to appropriate the rents and profits or the interest on the purchase-money, in case of sale, to the support of L., whenever it might be needed; and that an active duty was imposed upon G. to exercise care and supervision over the person and wants of L., and to provide for him within reasonable limits, without reference to his place of abode, to the extent of the rents and profits.

G. took possession of the farm and subsequently deeded it to defendant D. for the consideration of $400, which was secured by mortgage on the farm. D. also covenanting that he would "provide and furnish" L. during life "suitable clothing, food, lodgings and necessary medical attendance." It was also provided in the deed that the support and maintenance of L,. should "constitute and remain an indefeasible lien upon the premises." D. leased about an acre and a quarter of the farm with the buildings to P. in consideration that the latter would board L. and do his washing and mending. In case G. did not stay on the farm, then P. was to pay a rental of forty dollars a year. D. assisted P. in taking possession of the house; L. opposing it, was personally assaulted by a servant of D., and his bed and furniture were forcibly taken from the room he had occupied and packed away; he refused to remain and live with P., and thereafter lived with and was practically supported by plaintiff; he was needy and dependent, frequently sick and practically unable to support or care for himself. P. paid the rent agreed upon to D. Neither the latter nor G. have given to L. any attention or support. D. paid to G. annually the interest on the mortgage, which the latter appropriated to his use. In an action to enforce the trust, *held*, that after the purchase by D. his liabilities and those of G. were co-extensive; that G. did not, by his contract with D., relieve himself from the duty of seeing that his obligations to L. were performed; but as between him and D. the latter was primarily liable; that conceding the declaration of trust was limited to support to be furnished on the premises, no adequate or sufficient provision was made therefor, and the duties of the trust were wholly neglected; that G. and D. were liable for such damages as L. has sustained on account of their default, *i. e.*, the sum required for his reasonable and comfortable support, to the extent of the rents and profits from the time the trustee took possession; and so, that plaintiff was entitled to judgment for the sums required annually for that purpose, with interest, the same to be charged primarily upon the land; in case of deficiency, on sale, said deficiency to be paid by D., and in case of his inability, by G.

Reported below, 51 Hun, 511.

(Argued December 3, 1890; reargument ordered March 3, 1891; reargued April 16, 1891; decided June 2, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made at the February Term, 1889, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*D. M. Westfall* for appellants on original argument. The decree establishing a trust and the recovery thereunder, cannot properly be sustained under this complaint. (*Kelsey* v. *Western*, 2 N. Y. 506; *Bailey* v. *Rider*, 10 id. 363; *R. E. Bank* v. *Eames*, 1 Keyes, 592.) A finding of fact without evidence, or against the undisputed evidence, is an error in law subject to review in this court. (*Matthews* v. *Coe*, 49 N. Y. 60; *Meacham* v. *Burke*, 54 id. 217, 220; *Sickles* v. *Flanagan*, 79 id. 225; *Chase* v. *R. R. Co.*, 97 id. 384, 388.) The court below erred in receiving and applying evidence, and in making use of parol evidence, and extraneous and foreign instruments and circumstances, in interpreting and distorting the instrument claimed to be a declaration of trust. (Laws of 1860, chap. 322; 1 Hilliard on Real Prop. [4th ed.] 425; *Cook* v. *Barr*, 44 N. Y. 161.) It is not pretended that the agreement claimed to have been made between Miss McDoual and Gordon, as the consideration of the deed from her to him, was in writing. And such agreement, if clearly and conclusively proved to have been made by parol, would be void and not enforceable by action at law, or in equity. (*Hutchins* v. *Hutchins*, 98 N. Y. 57, 65; *Roe* v. *Barker*, 82 id. 432, 436; *Levy* v. *Brush*, 45 id. 539; *Wheeler* v. *Reynolds*, 66 id. 227, 235; *Sturtevant* v. *Sturtevant*, 20 id. 39; *Wilson* v. *Deen*, 74 id. 531, 536, 538; *Eighmie* v. *Taylor*, 98 id. 288.) The paper executed by Gordon and recorded April, 1876, neither creates, declares, establishes, or proves the trust relied upon by the plaintiff to maintain this action. (3 R. S. [7th ed.] 2326, §§ 6, 7; *Cook* v. *Barr*, 44 N. Y. 159, 160; 1 Hilliard on Real Prop. [4th ed.] 425; 1 Greenl. on Ev. § 268.) If the instrument in question is sufficient in form and substance to constitute a declaration of trust, it never became operative, because it never had an inception, and especially because the beneficiary at all times until at or just before the commencement of this action, repudiated it and sought to cancel and destroy it. (*Young* v. *Young*, 80 N. Y. 422; *In re Crawford*, 113 id. 560; *Jackson* v. *Phipps*, 12 Johns. 418; *Jackson* v. *Bodle*, 20 id. 184; *Elsey* v. *Metcalf*, 1 Den. 323, 326; *Pool* v. *Pool*, 1 Hill, 580; *Jenks* v.

*Robertson*, 58 N. Y. 621; *Reiley* v. *Smith*, 64 id. 576; *Wheat* v. *Rice*, 97 id. 296, 302; *Fonda* v. *Sage*, 48 id. 183; *Homer* v. *G. Ins. Co.*, 67 id. 478, 481; *Winch* v. *M. B. Ins. Co.*, 86 id. 618, 619; *Cornell* v. *Cornell*, 96 id. 108, 114; *Averill* v. *Patterson*, 10 id. 500; *Burnett* v. *Akin*, 38 Hun, 251.) The modification of the judgment by the General Term, as to the amount for which Davis should be liable jointly with Gordon, was prejudicial to Gordon, was without his consent, and was, therefore, error. (*Cussin* v. *Delaney*, 38 N. Y. 178; *Moffet* v. *Sackett*, 18 id. 522; *Whitehead* v. *Kennedy*, 69 id. 462.) The deed from Gordon to Davis, and the bond and mortgage executed by Davis at the time, should be reformed, or treated in this action as reformed, so as to embody the real agreement made between Gordon and Davis, as to the support of Larmouth, to wit: that he was to be supported by Davis upon the land conveyed and not elsewhere. (*McHenry* v. *Hazard*, 45 N. Y. 580, 587; *Andrews* v. *Gillespie*, 47 id. 487; *Bush* v. *Hicks*, 60 id. 298, 302; *G. M. Co.* v. *Hall*, 60 id. 226, 236; *A. C. S. Institution* v. *Burdick*, 87 id. 40, 45; *Carpenter* v. *M. L. Ins. Co.*, 93 id. 552; *Wheat* v. *Rice*, 97 id. 296, 302; *Meyer* v. *Lathrop*, 73 id. 316, 320, 321; *Pitcher* v. *Hennessey*, 48 id. 415; *Maher* v. *H. Ins. Co.*, 67 id. 291; *Martin* v. *McCormick*, 9 id. 331; *Champlain* v. *Laytin*, 18 Wend. 418; *Boyd* v. *De La Montagnie*, 73 id. 503; *Stanton* v. *Miller*, 58 id. 203, 204; *Fonda* v. *Sage*, 48 id. 189.) The transactions between Gordon and Davis furnish no cause of action against Davis in favor of Larmouth. (*Boyd* v. *Schlesinger*, 59 N. Y. 309; *Dillaye* v. *C. Bank*, 51 id. 353; *Gillig* v. *Maass*, 28 id. 192; *Judson* v. *Dana*, 79 id. 374, 378; 13 J. & S. 404; *Vrooman* v. *Turner*, 69 N. Y. 284; *Wheat* v. *Rice*, 97 id. 296, 302; *Nichol* v. *N. Y. & E. R. R. Co.*, 2 Kern. 121; *Port* v. *Bernheimer*, 31 Hun, 252; *Duryee* v. *Mayor, etc.*, 96 N. Y. 496, 497.) The claim as set up in the complaint in this action is barred by the Statute of Limitations. (Code Civ. Pro. § 382, subd. 1; *Loder* v. *Hatfield*, 71 N. Y. 92, 103, 104; *Borst* v. *Corry*, 15 id. 505; *McCrea* v. *Purmort*, 16 Wend. 476, 477; *Rundle* v. *Allison*, 34 N. Y. 180;

*Clark* v. *Ford*, 3 Keyes, 372 ; *Carr* v. *Thompson*, 87 N. Y.
160, 164.) If there was no insuperable objection to the plain-
tiff's right to maintain this action, the defendants would only
be accountable to such amount of the rent actually realized
by them, as would be sufficient for the comfortable support
and maintenance of Larmouth, in the neighborhood where he
lived upon a farm — and are not chargeable with the full
rental value of the land. (*Jackson* v. *Andrews*, 98 N. Y.
672, 674.)

*Matthew Hale* for respondent on original argument. The
court was right in holding that the instrument executed and
placed upon record by the defendant Gordon about the 19th day
of April, 1876, was a valid and binding declaration of trust, relat-
ing back to the date of the deed from Ellis McDoual. (1 Perry
on Trusts, § 82; 2 R. S. 134, §§ 6, 7; *Fisher* v. *Fields*, 10 Johns.
495 ; *Urann* v. *Coates*, 109 Mass. 581 ; *Montague* v. *Hayes*, 10
Gray, 609 ; *Wright* v. *Douglas*, 7 N. Y. 564 ; *Cook* v. *Barr*,
44 id. 156 ; *Adams* v. *Adams*, 21 Wall. 185 ; *Van Cott* v.
*Prentiss*, 104 N. Y. 45 ; *Westlake* v. *Wheat*, 43 Hun, 77.)
The appointment of the plaintiff as committee and his right
to bring this suit were properly and sufficiently proved. (*In
re Knickerbocker Bank*, 19 Barb. 602 ; *People* v. *Kelley*, 35
id. 447 ; *Dresser* v. *Van Pelt*, 15 How. Pr. 25 ; Code Civ.
Pro. §§ 340, 355 ; *Embury* v. *Conner*, 3 N. Y. 511 ; *In re
Cooper*, 93 id. 507 ; *In re Wolsey*, 95 id. 135.) The Statute
of Limitations is no defense. (Code Civ. Pro. § 388 ; *Peters*
v. *Delaphaine*, 49 N. Y. 362 ; *Hubbel* v. *Medbury*, 53 id.
98 ; *Rundell* v. *Allison*, 34 id. 480 ; *Lammer* v. *Stoddard*,
103 id. 672 ; 1 Perry on Trusts, § 863 ; *Kane* v. *Bloodgood*,
7 Johns. Ch. 90 ; Angell on Lim. § 166.) The third conclu-
sion of law that the recording of the declaration of trust was
constructive notice thereof to all subsequent purchasers or
incumbrancers was correct, and the exception thereto unten-
able. (1 R. S. 762, §§ 16, 17, 38; *Bacon* v. *Van Schoonhoven*,
19 Hun, 158 ; 87 N. Y. 446; *Grandin* v. *Hernandez*,

29 id. 399, 402.) The facts found by the trial court, and approved by the General Term, show that an equitable lien exists in favor of Ebenezer Larmouth. (1 Jones on Liens, §§ 28, 30 ; 2 Story's Eq. Juris. § 1231 ; *Hauselt* v. *Harrison,* 105 U. S. 401 ; *Gregory* v. *Morris,* 96 id. 619 ; *Mornington* v. *Keane,* 2 DeG. & J. 292 ; *Pinch* v. *Anthony,* 8 Allen, 536 ; *Seymour* v. *C. & N. F. R. R. Co.,* 25 Barb. 284, 302 ; *Price* v. *Palmer,* 23 Hun, 504 ; *Fowler* v. *M. L. Ins. Co.,* 28 id. 195 ; *Chase* v. *Peck,* 21 N. Y. 581 ; *Payne* v. *Wilson,* 74 id. 448 ; *Perry* v. *Bd. of Missions,* 102 id. 99 ; *Smith* v. *Smith,* 51 Hun, 164.) The usual method of enforcing a lien in equity, is by a sale of the property to which it is attached. (2 Story's Eq. Juris. § 1217 ; *Perry* v. *Bd. of Missions,* 102 N. Y. 99, 106 ; *Price* v. *Palmer,* 23 Hun, 504, 507 ; 1 R. S. 728, § 60.)

*D. M. Westfall* for appellants on reargument. The instrument executed by the defendant Gordon, considered as a declaration of trust, does not entitle Larmouth to support elsewhere than on the premises referred to in the instrument, so long as it is not refused him there. And if at any time, for any reason, it is not, or cannot be, properly furnished to him there, yet the instrument does not entitle him, nor any person for him except Gordon, to designate the place or manner of his support, nor does it entitle him, or any person for him except Gordon, to receive, or expend, appropriate or cause to be appropriated, the rents or the interest on the purchase-money. Gordon, if anyone, and not McArthur, is the trustee. (*Parker* v. *Parker,* 126 Mass. 433 ; 63 N. H. 31 ; *Pool* v. *Pool,* 1 Hill, 580 ; *McKillip* v. *McKillip,* 8 Barb. 556 ; *Currier* v. *Currier,* 2 N. H. 75 ; *Pratt* v. *Pratt,* 42 Mich. 174 ; *Zimmer* v. *Settle,* 19 Wkly. Dig. 245 ; *Boone* v. *Tipton,* 15 Ind. 270 ; *Green* v. *Green,* 32 id. 276 ; *Williams* v. *Thorne,* 70 N. Y. 270 ; *Campbell* v. *Foster,* 35 id. 361 ; *Genet* v. *Foster,* 18 How. Pr. 50 ; *Locke* v. *Mabbett,* 2 Keyes, 457 ; *Tolles* v. *Wood,* 99 N. Y. 616 ; *Loomis* v. *Loomis,* 35 Barb. 628.) The foregoing point, was raised by the pleadings

and by exceptions during the trial, and to findings and refusals. (*Truesdell* v. *Sarles*, 104 N. Y. 167.) Wherever the support was to be furnished, and however and by whomsoever the rents and interest were to be appropriated or paid, there has been no default. (*Brickhead* v. *Brown*, 5 Hill, 640; *McClusky* v. *Cromwell*, 1 Kern. 589; *People* v. *Pennock*, 60 N. Y. 426; *People* v. *Chalmers*, Id. 168; *Bissell* v. *Saxton*, 66 id. 60; *Ward* v. *Stahl*, 81 id. 406; *Thompson* v. *McGregor*, Id. 596; *N. M. Bank* v. *Conkling*, 90 id. 116; *McKillip* v. *McKillip*, 8 Barb. 556.) The constant and persistent repudiation by Larmouth and his committee of all interest of defendants in the property, and their constant and persistent claims adverse to Gordon's right or power to create the trust, are a waiver of all claims thereunder and constitute a perfect defense. (*Pool* v. *Pool*, 1 Hill, 580, 583; *McKillip* v. *McKillip*, 8 Barb. 556; *Boone* v. *Tipton*, 15 Ind. 270; *Jenks* v. *Robertson*, 58 N. Y. 621; *Risley* v. *Smith*, 64 id. 576; *Cornell* v. *Cornell*, 96 id. 108, 114; *Wheat* v. *Rice*, 97 id. 296, 302; *Homer* v. *G. M. L. I. Co.*, 67 id. 481; *Winch* v. *M. B. I. Co.*, 86 id. 619.) The judgment appealed from not only establishes a trust concerning lands by parol, but substitutes McArthur for Gordon to receive and expend, appropriate the trust fund, and that without removing Gordon. It is not *secundem allegata*. (*Cruger* v. *Holliday*, 11 Paige, 319; *Brennan* v. *Willson*, 71 N. Y. 507; *Diefendorf* v. *Spraker*, 10 id. 249; *Clark* v. *Dillon*, 97 id. 373.) The large allowance of interest on each year's rental value, and before demand, was unauthorized. (*Smith* v. *Velie*, 60 N. Y. 106; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 id. 331; *Bander* v. *Bander*, 7 Barb. 560; *Miller* v. *Clark*, 5 Lans. 388; *S. C. R. R. Co.* v. *Moravia*, 61 Barb. 181.) At most, the recovery should have been limited to the amount shown to have been needed for Larmouth's support, or for the payment of liabilities incurred for such support. (*Jackson* v. *Andrews*, 98 N. Y. 674; *Austin* v. *Austin*, 9 Ves. 420; *Joslin* v. *Parlin*, 54 id. 676; *Loudermilch* v. *Loudermilch*, 2 Pear. 134.)

*Matthew Hale* for respondent on reargument. The obligation of defendants under the instrument executed by the defendant Gordon, April 19, 1876, was not limited to the support of Larmouth upon the farm in question. (28 Cent. L. J. 316.) There has been a breach of trust by the defendants. (1 Perry on Trusts, § 402; *Adams* v. *Clifton*, 1 Russ. 297; *Hardwick* v. *Mynd*, 1 Anst. 109; *Hulme* v. *Hulme*, 2 M. & K. 682; *Flanders* v. *Lamphear*, 9 N. H. 201; *Bosley* v. *N. M. Co.*, 123 N. Y. 550, 558; *Ward* v. *Craig*, 87 id. 550, 557; *Burdick* v. *Freeman*, 120 id. 420, 425; *Thompson* v. *Hazard*, Id. 634.) There was no error in allowing interest. (*Smith* v. *Bodine*, 74 N. Y. 30, 37; *People* v. *Dudley*, 58 id. 323; *De Lavallette* v. *Wendt*, 75 id. 579, 582; *Van Rensselaer* v. *Jewett*, 2 id. 141; *Dana* v. *Feidler*, 12 id. 40, 51; *Winch* v. *M. B. I. Co.*, 86 id. 618, 620; *Little* v. *Banks*, 85 id. 258, 267; *King* v. *Talbot*, 40 id. 76, 92; 1 Perry on Trusts, 468; *Spear* v. *Tinkham*, 2 Barb. Ch. 211.) Larmouth could not repudiate the trust. (*Hughes* v. *Jones*, 116 N. Y. 67; *Van Deusen* v. *Sweet*, 51 id. 378; *Banker* v. *Banker*, 63 id. 409; *Rictor* v. *Rictor*, 111 Ind. 456.) Plaintiff as committee could not repudiate the trust. (*Robinson* v. *Frank*, 107 N. Y. 655; *R. Co.* v. *McCarthy*, 96 U. S. 258.) The trust in this case is to be enforced precisely as if it were created by will, or by a deed of trust for a valuable consideration. (1 Perry on Trusts, § 96; 1 Lewin on Trusts, 67, 68; *Stone* v. *Hackett*, 12 Gray, 227.) Where a sum of money, or the entire income of any property, is appropriated for the maintenance and support of another, the beneficiary is entitled to the benefit of the sum of money or income so appropriated, without reference to the purpose for which it is so appropriated; such purpose being merely evidence of the motive of the testator or creator of the trust. (*Webb* v. *Kelly*, 9 Sim. 472; *Lewis* v. *Lewis*, 16 id. 266; *Noel* v. *Jones*, Id. 309; *Bayne* v. *Crowther*, 20 Beav. 400; *Atwood* v. *Alvord*, L. R. [2 Eq. Div.] 479; *In re Sanderson*, 3 K. & J. 497.) The declaration of trust created an equitable lien on the farm in favor of

Larmouth. Such lien does not depend upon possession. (1 Jones on Liens, §§ 28, 30 ; 2 Story's Eq. Juris. § 1231 ; *Chase* v. *Peck*, 21 N. Y. 581 ; *Smith* v. *Smith*, 51 Hun, 164 ; 125 N. Y. 224.) The usual method of enforcing a lien in equity, is by a sale of the property, to which it is attached. (2 Story's Eq. Juris. § 1217 ; *Perry* v. *Board of Missions*, 102 N. Y. 99, 106 ; *Price* v. *Palmer*, 23 Hun, 504, 507 ; 2 Perry on Trusts, § 576 ; *Harris* v. *Fly*, 7 Paige, 421 ; *Dodge* v. *Munning*, 1 N. Y. 298.) The enforcement of the judgment will not take the fund out of the hands of the trustee. (1 R. S. 729, § 60.) It is over fourteen years since Gordon executed the conveyance to defendant Davis, by which he attempted to shift the responsibility which he had assumed because of the conveyance to him by Larmouth's mother, from his own shoulders to those of Davis, taking to himself a mortgage from Davis of $400, upon which he has since received the annual interest. This latter transaction was a breach of trust, which entitles plaintiff to maintain this action. (*Flanders* v. *Lamphear*, 9 N. H. 201.)

Ruger, Ch. J. This action is brought on behalf of Ebenezer Larmouth, a lunatic, against the defendant Gordon and his grantee, upon a declaration of trust executed by Gordon for the benefit of Larmouth, to enforce the trust and recover the rents and profits of the trust property claimed to have been misappropriated by the defendants.

The complaint proceeded upon the theory that the defendants had neglected to execute the duties of the trust, and had appropriated to their own use the income of the trust property, instead of applying it to the maintenance and support of its beneficiary, as provided by the trust.

This case has been the occasion of some difference of opinion in the court as to the construction to be given to the declaration of trust, and now comes before us upon a reargument. This disagreement has arisen as much, I think, from the divergent views taken of the facts by the various members of the court, as from any difference between us as to the rules

of law applicable to them. A more elaborate statement of the leading facts as they appear from the findings of the trial court, as well as from the undisputed evidence, will tend more, I think, to dissipate misconception and harmonize our views, than any other mode of treating the ca e. Stated in their chronological order, they are as follows : In the year 1876, one Ellis McDoual, an unmarried woman of the age of ninety years, owned and resided upon a farm of about forty-five acres in the town of Jackson, Washington county, having no other property of any material value. Her only son, then of the age of about sixty-six years, a harmless lunatic, resided with her and had so lived with her on the farm for many years. The farm was worth about $3,000, and its annual rental value, exclusive of taxes, was about $175. In the year 1873, Miss McDoual executed a will by which she devised all her property, both real and personal, in trust, to her executors to receive the rents and profits thereof and apply them to the use of her son, Ebenezer Larmouth, during his natural life, with remainder to her pastor and friend, the Rev. Henry Gordon. On October 16, 1874, Miss McDoual executed and delivered to Gordon a warranty deed of such premises for the consideration expressed in the deed " of one dollar and other valuable consideration to her duly paid," which deed was duly recorded October 22, 1874, in the clerk's office of Washington county. Miss McDoual died March 3, 1876, having lived upon and retained possession of the farm until that time, and leaving her son in possession thereof. On April 19, 1876, Gordon executed an instrument in writing, which he caused to be recorded in the clerk's office of Washington county, reading as follows :

" Know all men by these presents, that because of certain real estate duly conveyed to me by Ellis McDoual, late of the town of Jackson, Washington county, New York, I, Henry Gordon, of Coila, Washington county, New York, do, of my own free will and accord, hereby consider myself, heirs, executors or administrators, holden and firmly bound to appropriate or cause to be appropriated, for the comfortable support of Ebenezer Larmouth during his life, all the rents, after deducting

necessary expenses, of said real estate, or if said real estate
should be sold, the proper maintenance in board and clothing
should be first lien upon said real estate during the life of said
Ebenezer Larmouth. The subscriber to this bond distinctly
asserts that its obligations on him are limited to the rents of
said real estate, or to the interest on the purchase money,
should said real estate be sold. Signed with my hand and seal
this 19th day of April, 1876.

                    "HENRY GORDON. [ʟ. s.]"

Miss McDoual never owned or conveyed to Henry Gordon
any other real estate than this farm. Gordon preached Miss
McDoual's funeral sermon, immediately after her death, and
referring to her son, stated " that ample means have been pro-
vided for his support and welfare," and concluded by saying,
" the friends may rest assured that her wishes will be faith-
fully carried out." The first year after Miss McDoual's death
the executor of her will took possession of the farm and rented
it to one Green for $150 a year. During this time Larmouth
occupied the house on the farm alone and was boarded by
Green, who was allowed twenty shillings a week therefor, to
be applied upon the rent of the land. No special complaint
is made by the plaintiff, but that the income of the farm was
for this year substantially applied to the support of Larmouth.
In January, 1877, Henry Gordon executed and delivered to
one, Robert Davis, a warranty deed of the farm for the con-
sideration of $400, which was secured by a mortgage upon the
farm, and upon the further condition that Davis "would pro-
vide and furnish Ebenezer Larmouth " during his natural life
" suitable clothing, food, lodging and necessary medical attend-
ance and medicine," which Davis also thereby covenanted to pro-
vide. It was further provided by this deed that " the support
and maintenance of the said Larmouth, as aforesaid, shall con-
stitute and remain an indefeasible lien upon the premises
hereby conveyed during the natural life of said Larmouth."
Immediately after this conveyance the defendant Davis leased
about an acre and a quarter of the land, with the buildings on

the premises, to one · Plunkitt in consideration that Plunkitt should board Larmouth and do his washing and mending " if the said Larmouth would consent to stay on the farm with Plunkitt, and in case he did not, that Plunkitt should pay forty dollars a year for the privileges enjoyed by him." Davis occupied and cultivated the remainder · of the premises and received payment of the rent agreed to be paid by Plunkitt, Larmouth having refused to live in Plunkitt's family. Plunkitt was assisted in taking possession of the house by Davis, his servants, and the executor of Miss McDoual's will, and met with some opposition from Larmouth, who forbade them from coming upon the premises and claimed to own the farm and the property in the house, and asserted that they were attempting to rob him of his patrimony. Larmouth's bed and furniture were then forcibly taken from the room which he was accustomed to occupy and packed away in another part of the house, and he refused to remain and live with Plunkitt. It appears that Larmouth was a Presbyterian, of Scottish descent, and Plunkitt an Irish Catholic, with a family consisting of a wife and three children, and Larmouth being asked to stay with Plunkitt said he didn't want to live with an Irishman. He had been subjected to a personal assault at the hands of a servant of Davis on the premises previously. Larmouth then left the house with McArthur and has ever since continued to make it his home at McArthur's and has lived with and been practically supported by him. He has during all this time, up to the trial, been irrational, poor, needy and dependent, and frequently sick and practically unable to support or take care of himself. He has never received any attention or support from either Gordon or Davis, and all applications to them for aid have been uniformly neglected or evaded. Applications have been frequently made for assistance and the payment of bills for medical attendance and other necessaries, but they were met by Gordon, after he sold to Davis, with the declaration " that he had got through with it," and by Davis with a refusal to pay for anything he did not himself order. Plunkitt remained in possession of the property rented by him

for two years, after which Davis moved into the house and occupied it with the farm, and has continued to do so and to receive the rents and profits thereof to the time of the trial. Davis has never paid anything for the property, except the sum of $24 annually to Gordon as interest upon the bond and mortgage, which sum Gordon has appropriated to his own use.

There are certain propositions involved in this controversy concerning which there is no difference of opinion in the court, and among them are the following : *First.* That the declaration of April 19, 1876, constituted a valid and enforceable trust, and imposed upon its creator the obligations and duties of a trustee, to be discharged in accordance with the meaning and effect of the language used therein by him. *Second.* That in giving a construction to such instrument, regard may be had to the situation of the parties and the surrounding circumstances, as well as the language of the instrument, for the purpose of arriving at the intent of the author in making it, where that intent is not clearly expressed. *Third.* That this trust was irrevocable and cannot be limited or affected by any subsequent acts or contracts of the trustee with a stranger to the parties named in the instrument. *Fourth.* That so far as any interest in the real estate is concerned, the rights and liabilities of Gordon and Davis, after the purchase by Davis, were co-extensive, Davis having purchased not only with constructive as well as actual notice of the liabilities imposed upon the land by the terms of the trust, but also under a positive condition that he should hold the title subject to the obligation of discharging the duties imposed by its provisions upon the trustee. *Fifth.* That Gordon did not, by contracting with a third party to discharge his obligations to Larmouth, relieve himself from the duty of seeing that such obligations were performed. *Sixth.* That it is quite immaterial, so far as the liabilities of Gordon and Davis to the beneficiary of the trust are concerned, what the nature of the subsequent contract between Gordon and Davis was, and whether the same should be reformed or not.

Assuming the correctness of these propositions, there are left for consideration the following questions : *First.* Whether

610 . McArthur *v.* Gordon et al. [June,

Opinion of the Court, per. Ruger, Ch. J.

the provisions in the declaration of trust, relating to Larmouth's support and maintenance, are limited to support to be furnished on the premises therein referred to, or constitute a general obligation to appropriate the rents and profits of the trust property to his support wherever it might be needed. *Second.* Whether an active duty on the part of Gordon was incurred by the obligations of the trust to exercise care and supervision over the person and wants of the beneficiary, and to provide for them to the extent of such rents and profits wherever such care and supervision might be necessary and reasonable. *Third.* What is the measure of the liability incurred by Gordon, and how far has he made himself responsible by his neglect to appropriate the income of the trust property to the support of Larmouth.

It seems to be well established by the authorities that under a general obligation to maintain and support another, where no place is specified, the beneficiary may, as a general rule, live wherever he chooses, provided his choice does not involve needless expense. (*Wilder* v. *Whittemore*, 15 Mass. 262; *Stillwell* v. *Pease*, 4 N. J. Eq. 74; *Proctor* v. *Proctor*, 141 Mass. 165; *Conkey* v. *Everett*, 11 Gray, 95; *Pettee* v. *Case*, 2 Allen, 546; *Rowell* v. *Jewett*, 69 Me. 293.)

This rule is, undoubtedly, subject to exceptions in cases where there is great inadequacy of consideration, or family arrangements are made involving the support of some of its members by others who have been accustomed to live together, or the circumstances of the case and the language of the instrument indicate an intention that support shall be furnished in a particular manner, at a particular place, or by particular persons. In such cases the courts have sometimes construed similar contracts as meaning that support could be required only at the place or by the persons indicated, even though that was not made an express requirement of the agreement. Such were the cases of *McKillip* v. *McKillip* (8 Barb. 552), *Pool* v. *Pool* (1 Hill, 580), and others of like character.

We have, however, been unable to find, among the numerous cases referred to, any which are at all applicable to the

circumstances of this particular case. Whether we regard the language of the instrument, or the circumstances surrounding the parties, we find nothing which constitutes this case an exception to the general rule. The trust deed, unconditionally, devotes the net rents of the trust property to the support of the beneficiary, so far as they are necessary for that purpose, without reference to his place of abode, and implies that the trustee shall collect and appropriate them, from time to time, as they are needed by the beneficiary. There is nothing in the circumstances of the parties indicating an intention to limit the requirements of the beneficiary to a living upon the trust property. The creator of the trust evidently had no intention of making Larmouth a member of his own family. He was, apparently, an aged clergyman, living at a distance from his benefactress and was unadapted by occupation, character and pursuits, from receiving an uninviting and irrational person into his family, or of exercising personal supervision over the life, manners and occupation of such a person. He was in no wise related to his benefactress or her son, and had no apparent intention of changing his mode of life or engaging in the unaccustomed business of farming at a distance from the field of his accustomed labors. He certainly manifested no intention of permitting any member of Larmouth's family to live on the premises, and he had not then determined to farm out his support to strangers who were offensive to his religious and social feelings. No one was then living on the farm and none, therefore, who could receive and take care of Larmouth at that place, and it is obvious that the trustee had not then any person or family in view who could have had any interest in supporting him on the farm. The beneficiary, while not violent or dangerous, was unmanageable and insensible to the dictates of reason or propriety, and could be managed or controlled only by persuasion or force. It was at all times conjectural whether he would be satisfied with any provision, whether reasonable or not, which should be made for him, and in case he was not, it was obvious that other means would have to be adopted by the author of the trust in

order to make its object and purpose effective. When the trust was declared it is apparent that Gordon had no settled plan as to the disposition he intended to make of the property or the mode in which the duties of the trust were to be discharged. By the deed of trust he devoted all the rents of the farm, unconditionally, to the support of Larmouth, so far as they should be necessary, and in case he sold the farm he provided that the interest on the purchase-price should be the limit of his liability under the trust deed. These amounts were capable of definite ascertainment and were not subject to the uncertainty which would attend an obligation to support and maintain alone. It must then have appeared to Gordon a matter of comparative indifference whether these rents or interest should be expended upon the farm, or were paid to those who would apply them to the support of Larmouth. Indeed, the language of the trust furnishes irrefutable evidence that Gordon contemplated the sale of the property and the application of the interest money derived from the purchase-price to the support of Larmouth, wherever he might be, and it furnishes no answer to this view that the obligations of the trust were made a lien upon the farm. It was not till a year later that Gordon concluded to realize on his interest in the farm and he then considered it worth about one-seventh of the value of the property, leaving at least six-sevenths to accomplish the purposes of the trust. The theory that, under the terms of the trust deed, Larmouth would be obligated to take his support upon the trust property, seems to have been an after thought, as it was neither expressed in the trust deed, claimed on the trial, presented by finding or exception, or raised in the points of defendant's counsel in this court until the reargument of the case. The main drift of the defendant's contention, heretofore, has been that under the terms of the deed from Gordon to Davis, if reformed as Davis desired it should be, he could not be held liable to furnish support except upon the property purchased.

We are, therefore, of the opinion that the trust deed constituted the rents and profits of the farm, or the interest upon

its purchase-price, a trust fund for the support of Larmouth, and that it was the duty of the trustee thereunder to exercise a supervision over his care and comfort, and apply such proceeds to his use, so far as they were necessary, wherever he might, within reasonable limits, be cared for and supported. These duties were assumed for an ample consideration by Davis upon his purchase, and, as between Gordon and Davis, he became primarily liable to discharge them. It is obvious from the undisputed evidence in the case that both Davis and Gordon have been grossly derelict and negligent in the performance of their duties. The series of proceedings by which substituted performances of the duties of the trust were attempted to be made, which culminated in the obligation of Plunkitt to devote forty dollars a year to that purpose, illustrate the indifferent and improvident manner in which this trust has been neglected by the trustee. No consideration whatever seems to have been given to the wishes of Larmouth, or regard manifested for his welfare, health or comfort; but an unconscientious struggle was entered upon by the substituted agencies to find the minimum sum to which the obligations of the trust might be reduced. Gordon thought the rents and profits of about six-sevenths of the farm were sufficient for the purpose; but Davis was of the opinion that less than a quarter of the amount was necessary, and Plunkitt undertook to make a profit even at that price. Larmouth was thus turned over to strangers, whose only interest in him was to see how cheaply he could be made to live, or if his living could not be made so disagreable, that he would abandon all claims to support from the defendants. We are of the opinion that even if the obligations of the trust had required Larmouth to take his support upon the farm, no adequate or sufficient provision was there made for him; and much more was this the case if he had the right to live elsewhere, as no provision whatever was made for such a contingency.

Having reached the conclusion that the duties of the trust have been wholly neglected by those charged with their performance, it follows that they are liable in this action for such

damages as have been incurred by Larmouth on account of their default, to the extent of the rents and profits of the land, or the sum which, with reasonable care and prudence in its management, it would have yielded from the time the trustee took possession in March, 1877. Such damages could not, however, have been extended beyond the sum which was required for the reasonable and comfortable support of the beneficiary; but, to this extent, they were applicable, even if it required the whole of such rents and profits. The evidence on the subject of the amount required for the support of Larmouth is somewhat indefinite and the trial court made no finding on the subject. There is evidence furnished by the testimony of the principal parties to the action, which shows a practical agreement as to the sum which ought to be paid for the purposes of the trust.

Davis expressly swears that he was willing and offered to pay the sum of $100 annually to the relatives of Larmouth, and the plaintiff, although denying that such offer had been made, leaves his evidence open to the inference that if he had understood the offer to have been made he would have accepted it. William Larmon, a relative and representative of Larmouth, testifies that he had a conversation with Davis, in which he asked him to pay a hundred dollars a year for Larmouth's support, but Davis refused to do so. We think there was a substantial agreement between the interested parties that one hundred dollars a year was deemed a satisfactory sum to pay towards Larmouth's maintenance.

In view of the desire of the parties, manifested on the argument, that a final judgment should be made in the case, we have concluded to give effect to the apparent concurrence of the parties on the trial as to the amount which should be paid for the annual support of Larmouth. It is certainly desirable that a controversy which has extended over a long period of time, should be ended, and some relief should be afforded to the helpless and indigent beneficiary before his death, which, in the ordinary course of nature, must soon occur, if this can be consistently done.

We are, therefore, of the opinion that the judgment should be modified so as to provide for the payment of one hundred dollars a year, with interest on such annual payments, with costs of the action to plaintiff in all of the courts. The payments to commence with March 6, 1878 and continue to the day of sale or until the death of Larmouth if that should sooner occur. That these sums having by the trust been made a lien upon the land, should be primarily charged upon it, and in case there should be a deficiency on the sale thereof to meet the charges, that such deficiency should be adjudged to be paid by the defendant Robert Davis, and in case of his inability to pay it, then upon the defendant Gordon.

The judgment is, therefore, affirmed as modified, with costs in all the courts.

All concur except EARL, J., dissenting and GRAY, J., not voting.

Judgment accordingly.