F. COIT JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. COIT JOHNSON AND STUART HOLMES JOHNSON, EXECUTORS OF THE ESTATE OF FLORENCE D. JOHNSON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75968, 75969.   Promulgated January 30, 1936.

*Dean Emery, Esq.*, for the petitioners.
*Carroll Walker, Esq.*, for the respondent.

1004

1006

OPINION.

SEAWELL: Section 23 of the Revenue Act of 1928 provides:

In computing net income there shall be allowed as deductions:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) *Interest.*—All interest paid or accrued within the taxable year * * *.

Petitioner Johnson contends that he borrowed $400,000 from the City Bank Farmers Trust Co., trustee, and gave the trustee his demand note for that amount bearing 6 percent interest, and that during the taxable year paid said trustee $24,000, the amount of interest accrued on the note during the year.

Interest is defined to be "compensation which is paid by the borrower to the lender or by the debtor to the creditor for its use"—Bouvier.

Respondent contends on the other hand that there was no bona fide gift by Johnson to his wife and no bona fide borrowing by Johnson from the trustee; that the trustee had lent Johnson no money, and Johnson was not a debtor to the trustee on any account; and that the payment of $24,000 to the trustee was in no sense compensation for the use of money or for the postponement of a debt satisfaction. In short, respondent says the trustee was a mere agent or factor for the payment of the insurance premiums on Johnson's insurance; that Mrs. Johnson was a figurehead set to act her part in the drama set up for the benefit of her husband; and that the whole fabrication of the borrowing, pretended gift, and the setting up of trusts was simply a device to make payments of life insurance look like payments of interest whereby Johnson might escape payment of taxes on that much of his income.

Respondent insists further that all the acts and things done and performed by Johnson and his wife were the direct consequence of the suggestion of the lawyer and insurance man of a way for Johnson to escape tax in a sum equal to his insurance premiums; that the devious ways of these actions were merely to create appearances; that instead of actually borrowing $400,000 from the bank, and performing the other acts mentioned, Johnson could have handed over his unsecured demand note to the trustee and immediately upon demand borrowed it back and the trustee would have had a trust fund just as real and

substantial as that which he secured. In either case, however, respondent contends, the provisions of the trust instrument effectually removed his note to the trustee from any negotiable instrument law.

These contentions of the parties have their application also to Mrs. Johnson's case. She did not testify as a witness in the proceedings.

The facts and circumstances herein make pertinent the comment of the Court in its opinion in *Burnet* v. *Wells*, 289 U. S. 670, wherein it is said: "The solidarity of the family is to make it possible for the taxpayer to surrender title to another and to keep dominion for himself, or, if not technical dominion, at least the substance of enjoyment." And in *Willcuts* v. *Douglas*, 73 Fed. (2d) 130, it is stated: "Among the devices employed to avoid income and estate taxes none has been more used than trusts dealing with members of a family, and the courts have been alert to prevent such avoidance by this means." In *Corliss* v. *Bowers*, 281 U. S. 376, Mr. Justice Holmes, delivering the opinion of the Court, said in part: "But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid."

In *Elizabeth Bruce* v. *Helvering*, 76 Fed. (2d) 442, the United States Court of Appeals of the District of Columbia, in reversing this Board, said:

The case we have would be wholly different if it appeared the plan was one designed to defeat the payment of taxes. In such a case it would be just as subject to condemnation as was the fictitious transfer of assets by one corporation to another, and thence to the sole stockholder, which, though accomplished in strict conformity with the statute, the Supreme Court denounced in *Gregory* v. *Helvering* (January 7, 1935).

The $400,000 delivered to Mrs. Johnson by her husband is shown to have been with the understanding of both that it was to be put in trust with the limitations and conditions attached, which made it exceedingly easy for him to have the amount immediately returned to him to use as he might wish, upon his merely agreeing to pay to the trustee 6 percent interest thereon, from which interest, if paid, the trustee was to pay insurance premiums on the aforesaid policies. It was understood by all three, his wife, the trustee, and himself, that the trustee was not to force collection of either interest or principal unless Mrs. Johnson should "specifically" so direct in writing during her life or such direction should be given by her executor after her death, and it was also a part of the trust agreement that the trustee was "expressly prohibited" from disposing of her husband's notes for such indebtedness except upon condition above stated. Under such limitations and conditions, so understood by all three, it is not surprising that Johnson in testifying felt justified in stating: "I knew there was no way the trustee could force payment." His alleged gift of $400,000 to his wife, therefore, does not appear to

have been an absolute and unconditional bona fide gift, in view of the testimony taken in connection with the trust instruments themselves. He had complete confidence in his wife and was apparently warranted in feeling there would never be any specific direction on her part or by her executor to the trustee to enforce collection of either interest or principal of his note during her or his life. That his confidence in his wife as to her action with reference to the debt was not misplaced is further forcibly indicated by the fact that no demand for payment of the debt, so far as shown by the record, was ever directed by the wife during her life and the provisions made for her husband in her will—as quoted in our findings of fact—fully protect him against any demand for payments during his life.

Johnson desired to continue in force the policies of insurance on which he had been paying premiums, and the trusts created, while not directly established by him, were, in our opinion, created at his instance and by his direction and intended for his benefit by enabling him to take as a deduction in computing his taxable net income what he would pay on his obligations, which he still recognized, to the insurance companies. The situation makes applicable the principle enunciated by Mr. Chief Justice Hughes in *Douglas* v. *Willcuts*, 296 U. S. 1 (affirming 73 Fed. (2d) 130, *supra*), wherein he said: "The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered."

It is stated in both trust instruments that the laws of the State of New York were to govern their provisions. Numerous decisions of the courts of the State of New York are cited and relied on by counsel for the petitioners to sustain their contention that, notwithstanding the specific provision in the funded trust that the trustee therein was "expressly prohibited from disposing of" the notes of Johnson during his life or "taking any action whatsoever to collect or looking to the collection of the same or of the interest thereon, or to enforce any of the provisions thereof * * *", except as the trustee should be "specifically directed in writing by the Donor during her lifetime, or after her death by her executor or administrator", the trustee might disregard the provisions of the trust and enforce collection against Johnson, contrary to his wife's direction and desires. However, we do not think such conclusion, in the circumstances of the instant proceedings, justified by the authorities cited.

The facts and circumstances involved in the instant proceedings are distinguishable from those in the cases cited in behalf of the petitioners, and the decisions therein, therefore, are not controlling. None of those cases goes to the extent of holding that the trustee may disregard the mandatory provisions of the trust, as in the instant case, wherein

the maker of the note is the husband of the donor of the trust, created after his explanation of the scheme to her and in accordance with his desires and interest. Where the provisions of the trust are not illegal and the powers of the trustee are defined and limited by clear and express language of the trust instrument, the trustee is bound thereby. See *McArthur* v. *Gordon*, 27 N. E. 1033; 126 N. Y. 597; *In re Watson*, 142 N. Y. S. 1058; affd., 148 N. Y. S. 1020.

We agree substantially with the contentions of the respondent as to the reasons for the denial to Johnson of a deduction of the $24,000 alleged interest payment. We hold that the alleged $400,000 trust fund in the ultimate reality was not to be provided from the assets or capital of either Johnson or his wife nor from any loan negotiated by either which was intended to constitute any binding obligation on either of them to repay. Johnson was to secure a temporary loan of $400,000, turn it over to his wife there in the bank where they were assembled with the other participants in this matter. She was to return the money immediately to her bank. She was then to give her check to the nominal trustee who was required upon Johnson's request (predetermined) as soon as practicable, to lend it to Johnson, under circumstances negativing any real obligation or intention ever to repay it. Johnson would then under the plan use the amount to pay off and discharge the original temporary loan from the National City Bank. The trustee, under the trust instrument, was forbidden to assign any obligation of Johnson given by him for the loan, or to enforce in any way the return of any part of the loan or interest to the trustee without the written direction of Mrs. Johnson or her executor. The executor was Johnson himself (albeit his son was co-executor) and he was also the legatee of the trust fund. It matters not that the executor was named later in a will thereafter executed. The facts, which speak clearly, indicate this circumstance was not overlooked. Under all the facts we find and hold that the transactions of the parties above detailed were all executed with the primary and dominating purpose and intention of avoiding or evading taxes, and there was no bona fide gift made by Johnson to his wife or loan secured by Johnson from the trustee; and the $24,000 paid by Johnson to the City Bank Farmers Trust Co. is not deductible. Accordingly, we affirm the determination of the respondent as to Johnson's case, Docket No. 75968.

It follows, in accordance with respondent's contention in the cause and his statement above noted, that we should sustain Mrs. Johnson, petitioner in Docket No. 75969, which we do.

Reviewed by the Board.

*Judgment in favor of the respondent will be entered in Docket No. 75968, and in favor of petitioner in Docket No. 75969.*

LEECH concurs in the result.