Robert Walker Tyson v. Commissioner.
Tyson v. Commissioner
Docket No. 2388.
United States Tax Court
1944 Tax Ct. Memo LEXIS 345; 3 T.C.M. (CCH) 200; T.C.M. (RIA) 44060; February 29, 1944
*345 James A. O'Callaghan, Esq., 111 W. Washington St., Chicago, Ill., for the petitioner. Charles Munz, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiency in income tax for the year 1940 in the sum of $3,870.33. The issue is whether the petitioner is entitled to a deduction of the sum of $10,248.82 allegedly paid to his wife as her share of the earnings of a loan business which he operated. The case was submitted on oral testimony and documentary proof. Findings of Fact The petitioner is an individual residing at 3 South Grove Avenue, Elgin, Illinois. His income tax return for the year involved was filed with the collector of internal revenue for the first district of Illinois. During the taxable year 1940, and prior thereto, the petitioner operated a loan business licensed under the laws of the state of Illinois. The administrative office was located at Elgin, Illinois. He also operated a loan business at Davenport, Iowa, and was a partner in a third loan business operated by his brothers at Danville, Illinois. On January 6, 1940 he executed the following document: "Know All Men By These Presents: - "That *346 I, R. W. Tyson, of the City of Elgin, County of Kane, State of Illinois, in consideration of love and affection, hereby give, irrevocably assign and set over to my wife, Evelyn M. Tyson. for her own use forever, a cash interest of Four Thousand ($4,000.00) Dollars in my licensed small loan business and the said Evelyn M. Tyson shall have immediate credit on the general ledger of the books of the said licensed small loan business, in her own name, for the sum of Four Thousand ($4,000.00) Dollars and the said sum shall be immediately charged against my own account. "Witness my hand and seal this Sixth Day of January A. D. Nineteen Hundred and Forty. R. W. Tyson (Seal) "Witness Eva Hopkins" On January 24, 1940 he executed a similar document assigning a cash interest of $40,000. On the same day his wife, Evelyn M. Tyson, executed a receipt as follows: ["STATE OF ILLINOIS "COUNTY OF KANE] SS "I, Evelyn M. Tyson, hereby certify that I have received from Robert W. Tyson the sum of $40,000.00 as a gift from him to me and that there are no reservations, acceptances, or restrictions on said gift and it is to be my absolute property forever. "Dated at Elgin, Illinois, this 24th *347 day of January, A. D. 1940. "(Signed) Evelyn M. Tyson" On January 3, 1939 the petitioner executed a document purporting to assign a cash interest of $4,000 to his wife and on January 1, 1938, a cash interest of $5,000. Both of these documents were similar to the document of January 6, 1940, set forth in full above, and both were witnessed by "Eva Hopkins", an employee of the petitioner. On January 10, 1940 the petitioner and his wife, Evelyn M. Tyson, executed a paper called "Contracts and Agreements" which reads as follows: "KNOW ALL MEN BY THESE PRESENTS: - "That R. W. Tyson of the City of Elgin, County of Kane, State ofillinois and Evelyn M. Tyson of the City of Elgin, County of Kane, State of Illinois, do hereby enter into the following contract and agreement. "Whereas, the said R. W. Tyson is the sole owner and manager of certain small loan businesses and is possessed of various other properties both real and personal, and interests in various properties, and in connection with and for the benefit of such offices, investments, and properties and in order to more profitably take care of the same, does operate a separate and distinct business known as an Administrative Office. *348 "It has been mutually agreed upon by and between the parties hereto that Evelyn M. Tyson is to advance and loan to R. W. Tyson certain sums of money for use in the business above described and named, belonging to R. W. Tyson, or to use in any other office or offices R. W. Tyson may hereafter establish or acquire, or for the purchase of property both real and personal and/or interest therein, or for any other purpose he may desire, not inconsistent with and under the following terms and conditions. "The said Evelyn M. Tyson is to advance and loan certain sums of money from time to time to the said R. W. Tyson, and, upon the average monthly balance of such monies so advanced and loaned, the said Evelyn M. Tyson shall be entitled to receive at the end of each fiscal year, December 31st, or as soon thereafter as computation can be made, such proportionate share of the net profits of the above named Administrative Office as the average monthly balance of such monies so advanced and loaned by the said Evelyn M. Tyson bears to the total capitalization employed in the above named Administrative Office for the particular year in which computation shall be made. "It is hereby understood *349 and agreed by and between the parties hereto that the capital of the above named Administrative Office is to consist of monies invested in the said business by the said R. W. Tyson, and monies advanced and loaned by others unnamed, and including that advanced and loaned by the said Evelyn M. Tyson. "It is further mutually agreed upon by and between the parties hereto, that before the net profits can be [determined], all expenses of the above named Administrative Office of every kind and nature, and all bonuses to employees, whtc the said R. W. Tyson considers as necessary or desirable for the proper conduct of the above named administrative Office, shall first be deducted. Said expenses shall also include a salary of not exceeding Twelve Thousand ($12,000.00) Dollars per annum to the said R. W. TYSON for his services as manager. "It is further expressly agreed upon by and between the parties hereto that the said Evelyn M. Tyson is not to be considered a partner in the above named Administrative Office by reason of any monies advanced or loaned the said R. W. Tyson, nor is she to acquire any right, title, or interest in or to the good will of such business, or to the profit or profits *350 from the sale of such business, above named, or to the sale of any part or parts of such business above named; the interest of the said Evelyn M. Tyson being hereby specifically and definitely limited to the profits accruing from the regular operation and conduct of such business as a going business. And in no event is the said Evelyn M. Tyson chargeable with any net loss occasioned by the operation of the said business. "It is further agreed by and between the parties hereto that this contract and agreement may be terminated by either party upon twelve (12) months' written notice to the other party, and upon termination of such notice, full settlement under the terms of this contract and agreement shall be made; except, that in the event that the termination of said notice falls upon any other date than the end of the fiscal year, December 31st, that no computation of the net profits for that particular year shall be made, or paid over to the said Evelyn M. Tyson until December 31st, or as soon after as computation can be made. However, it shall be optional with the said R. W. Tyson to permit the said Evelyn M. Tyson to withdraw any part or all the funds, standing to the credit *351 of Evelyn M. Tyson. "The said R. W. Tyson agrees to open an account upon the books of the general ledger of the above named Administrative Office in the name of "Evelyn M. Tyson Loan Account" and any and all monies advanced and loaned by Evelyn M. Tyson to R. W. Tyson, and all profits accruing to Evelyn M. Tyson under the terms of this contract and agreement, shall be credited to such account, above named, and any and all profits so credited, advanced and loaned to the said R. W. Tyson, unless diminished by withdrawals, which withdrawals shall be debited or charged against the said account of Evelyn M. Tyson. "Any sum or sums withdrawn by the said Evelyn M. Tyson shall be paid by the said R. W. Tyson by check, which check, when accepted by the said Evelyn M. Tyson, duly endorsed by her and upon cancellation by the bank upon which said check shall be drawn, shall be considered a receipt for the payment of the amount for which said check has been drawn, for money repaid to the said Evelyn M. Tyson. "It is further agreed by and between the parties hereto that Evelyn M. Tyson shall have access to the books and papers connected with the above named Administrative Office at all times, *352 in order to fully protect her interests, set out under this contract and agreement, and in case of any controversy under the terms hereof, it shall be the endeavor of the parties hereto to try to agree first upon an individual arbiter before proceeding to legal action of any kind. "This contract and agreement supercedes [Supersedes] and cancels any and all previous contracts and agreements which may have been made and is now the only contract and agreement between R. W. Tyson and Evelyn M. Tyson, Further, this contract and agreement will not be altered or modified in any manner except it be done in writing, signed by both parties hereto, nor will the parties hereto enter into any new agreement or contract unless it be written instrument duly signed, sealed and delivered. "This contract and agreement made in duplicate and in witness whereof the parties hereto have set their hands and seals this Tenth Day of January A. D. Nineteen Hundred Forty. R. W. Tyson Evelyn M. Tyson Eva Hopkins [Etta M. Lorstenson] Witnesses" The petitioner's ledger contained an account as follows: EVELYN M. TYSON Loan Account
Draw Account
January
Feb. 14, 1940
$ 54.39
1, 1940
$14,517.40
January
Feb. 19, 1940
2,200.00
24,1940
40,000.00
April 3, 1940
600.00
June 3, 1940
1,000.00
$54,517.40
July 26, 1940
700.00
Sept. 30, 1940
450.00
Oct. 31, 1940
133.30
Nov. 4, 1940
386.85
Dec. 16, 1940
722.07
Dec. 28, 1940
4,000.00
$10,246.61
*353 The cash book and journal of the petitioner show the following corresponding entires: Capital Account
Credit
Debit
Jan. 10, 1940
Evelyn M. Tyson Loan Acct.
By cash on 1/1-1/3-1/5
$14,517.40
Jan. 24, 1940
Capital Account
Gift to Evelyn M. Tyson
$40,000.00
Jan. 24, 1940
Evelyn M. Tyson Loan Acct.
By gift from R. W. Tyson
40,000.00
Feb. 14, 1940
Evelyn M. Tyson Loan Acct.
Income tax payment in full
54.39
Feb. 19, 1940
Evelyn M. Tyson Drawing Acct.
By cash for trip
2,200.00
April 3, 1940
Evelyn M. Tyson Drawing Acct.
For living expenses
600.00
June 3, 1940
Evelyn M. Tyson Drawing Acct.
By cash for living expenses
1,000.00
July 26, 1940
Evelyn M. Tyson Drawing Acct.
By cash for living expenses
700.00
Sept. 30, 1940
Evelyn M. Tyson Drawing Acct.
By cash on 9/5 (living expense)
450.00
Oct. 31, 1940
Evelyn M. Tyson Drawing Acct.
By cash to Elgin Academy
133.30
Nov. 4, 1940
Evelyn M. Tyson Drawing Acct.
Premium on Life Ins. Policy on R.W.T.
386.85
Dec. 16, 1940
Evelyn M. Tyson Drawing Acct.
By ch. #2511-2519 (liv. exp. - Camera)
722.07
Dec. 28, 1940
Evelyn M. Tyson Drawing Acct.
Estimated Bal. of Profit for 1940
4,000.00
On *354 January 19, 1941, petitioner addressed a letter to Mrs. Evelyn M. Tyson purporting to show a statement of her loan account in his "Elgin Administrative Office" on that date as follows: Average loan balance for 1940
$47,935.00
Actual balance, December 31, 1940
54,517.40
Earnings for 1940 on average balance at 21.3806%
$10,248.82
Less withdrawals in 1940
10,246.61
Balance to be credited
2.21
Total amount standing to your credit as of January 1, 1941
54,519.61
Re-investment of cash on January 9, 1941
4,000.00
Total to your credit on January 14th
$58,519.61
The petitioner's books of account do not reflect, during the year 1940, any entry covering the assignment of a cash interest of $4,000 to his wife, Evelyn M. Tyson, as indicated by the document dated January 6, 1940. All the monies received and disbursed by the petitioner, including those from his personally operated loan business, the profits from the partnership business at Danville, Illinois, and his security transactions were reflected in his account books kept at the Administrative Office, and the amount of profits allocated to petitioner's wife was based thereon. No partnership existed between *355 the petitioner and his wife with respect to his loan business nor his other activities involved herein. In his income tax return for the year 1940 the petitioner deducted the sum of $10,248.82 under the heading "other deductions authorized by law." Under Schedule H the deduction was explained as "Portion of profit paid Evelyn M. Tyson under contract on borrowed money invested in the business." The deduction was disallowed for the following reasons, as set forth in the notice of deficiency: "* * * It has been determined that you are taxable on the entire net income of your business without any such reduction; and that no deduction is allowable under any provision of Section 23 of the Internal Revenue Code for any portion of said amount, for the following reasons: (1) your returns are filed on the cash basis and no portion of said amount was paid within the taxable year; (2) your wife did not earn or become otherwise entitled to share in the earnings and profits of your business; (3) the prior credits on your books to an account in the name of your wife did not constitute bona fide completed gifts; (4) your wife did not make any bona fide loans to you or otherwise make any bona fide *356 investments in your business; and (5) the alleged contract with your wife was a mere sham or anticipatory device or arrangement for the purported reallocation of your income within your own family group, and without any change of substance in the ownership or control of the business producing the income." By the purported assignments of a cash interest of $4,000 on January 6, 1940 and $40,000 on January 24, 1940 to his wife. Evelyn M. Tyson, the petitioner did not intend to divest himself of the ownership and control of the res. Evelyn M. Tyson knew of the petitioner's intent not to divest himself of the control of the res. of which fact the petitioner was aware. The sum of $10,248.82, deducted by the petitioner in his income tax return for 1940 as a share in the profits of his business paid to his wife, was income of the petitioner and taxable to him in 1940. Opinion The petitioner's right to succeed here is dependent upon the question whether the evidence establishes that the instruments assigning to his wife, Evelyn M. Tyson, under dates of January 6, 1940 and January 24, 1940, a cash interest of the amounts of $4,000 and $40,000, respectively, in his loan business, were intended *357 to be absolute gifts or merely colorable transactions. Upon their face and divorced from the surrounding circumstances, the instruments undoubtedly transfer an absolute interest in the petitioner's business to the extent specified and create a legal and enforceable liability. In passing upon a challenged tax event, however, there is always present the question whether the transaction is in fact what it appears to be in form. Johnson v. Commissioner, 86 Fed. (2d) 710, affirming 33 B.T.A. 1003. This transaction is between husband and wife. By reason of the opportunity afforded by the cloak of marital relations, such transactions are closely scrutinized to determine their real character. On January 10, 1940, between the dates of the execution of the two instruments of assignment, the petitioner and his wife entered into a "Contract and Agreement." This instrument, when analyzed in conjunction with what was done under it and in the light of the petitioner's testimony, is significant in ascertaining the real intent of the parties in executing the various instruments referred to in our findings of fact. The preamble of the "Contract *358 and Agreement", recites: "Whereas, the said R. W. Tyson is the sole owner and manager of certain small loan businesses * * *", when in fact the documentary proof shows that the petitioner had unconditionally assigned to his wife a cash interest of $5,000 on January 1, 1938; a cash interest of $4,000 on January 3, 1939; and a cash interest of $4,000 on January 6, 1940. This last item, although evidenced by a written document, was not reflected in petitioner's account books nor was any explanation made concerning it. If, as petitioner testified and as he now contends, he made an absolute gift of these intangible interests in the assets of the business, by what right could he claim "sole" ownership of the business? In another clause it is provided: "The said Evelyn M. Tyson is to advance and loan certain sums of money * * * to the said R. W. Tyson, and, upon the average monthly balance of such monies * * * shall be entitled to receive * * * such proportionate share of the net profits * * * as the average monthly balance of such monies so advanced and loaned by the said Evelyn M. Tyson bears to the total capitalization employed * * * for the particular year in which computation shall *359 be made." This clause would seem to be specifically designed to permit manipulation of the percentage figure to measure the wife's share. The next clause provides for the deduction of all expenses, etc., including a salary to the petitioner up to $12,000. The evidence shows that while the petitioner's net income, as reported on his return, was $39,578.68, he drew no salary from the "Administrative Office", thereby increasing his wife's share in the net earnings. One of the most significant clauses is that which provides: "It is further expressly agreed * * * the said Evelyn M. Tyson is not to be considered a partner * * * nor is she to acquire any right, title, or interest in or to the good will of such business, or to the profit or profits from the sale of such business, above named, or to the sale of any part or parts of such business above named; the interest of the said Evelyn M. Tyson being hereby specifically and definitely limited to the profits accruing from the regular operation and conduct of such business as a going business. * * *" The latter clause, limiting the wife's interest to "the profits accruing" is entirely inconsistent with the theory that the assignment of the *360 intangible interest created any absolute legal right to the specific assets invested in the business. Another provision permitted the agreement to be terminated by either party on giving twelve months' notice, and settlement was to be made upon such termination. This paragraph contained the clause: "However, it shall be optional with the said R. W. Tyson to permit the said Evelyn M. Tyson to withdraw any part or all the funds, standing to the credit of Evelyn M. Tyson." This latter clause also appears to be inconsistent with any absolute right in the wife to the assets of the business. The contract further provided that "Any sum or sums withdrawn by the said Evelyn M. Tyson shall be paid by the said R. W. Tyson by check." The evidence shows that of the $10,246.61 withdrawn from said "Evelyn M. Tyson" Account, $4,483.30 was by cash withdrawal. The petitioner's books show that nearly all the monies charged against the "Evelyn M. Tyson" drawing account, except the $4,000 estimated balance of profit charged December 28, 1940, were used to discharge the petitioner's legal obligations. The petitioner testified, however, that during the year 1940 he paid all household running expenses, including *361 the maintenance and education of his children. Weighing all the evidence and viewing all of the transactions as a composite picture, we are satisfied that neither the petitioner intended to make a bona fide gift of any part of his business nor did his wife believe she received any such interest. No such gift was, in fact, made. We have so found. The "Contract and Agreement" of January 10, 1940 clearly establishes the fact that the petitioner had not surrendered ownership and control of the res. This agreement was in effect when the $40,000 cash interest was assigned by the instrument of January 24, 1940. We doubt if this assignment would have been made but for the existence of the contract of January 10, 1940. We think the logical inference to be drawn is that the petitioner intended to assign merely a share of the net earnings of the business, and that his wife so understood it. Upon this record, we conclude that all of the net revenue from the petitioner's various businesses in 1940 was the income of the petitioner and taxable solely to him. Lucas v. Earl, 281 U.S. 111; Helvering v. Horst, 311 U.S. 112. Although *362 not pleaded, it may be said that our finding that petitioner never absolutely parted with his ownership of the funds referred to in these purported assignments disposes of the possibility that petitioner could deduct any of the amounts paid to his wife as interest on loans to him to her. Johnson v. Commissioner, supra. Respondent properly disallowed the contested deduction. Decision will be entered for the-respondent.