225 F.2d 69
 55-1 USTC P 9275
 Adeline KIRSCHENMANN, Appellant,
v.
Harry C. WESTOVER, United States Collector of internal
Revenue for the Sixth District of California, Appellee.
Henry KIRSCHENMANN, Appellant,
v.
Harry C. WESTOVER, United States Collector of Internal
Revenue for the Sixth District of California, Appellee.
 No. 13736.
 United States Court of Appeals, Ninth Circuit.
 March 8, 1955.
Rehearing Denied May 31, 1955.
Certiorari Denied Oct. 10, 1955.
See 76 S.Ct. 70.
 
 1
 Rainey & Blum, Beverly Hills, Cal., for appellant.
 
 
 2
 H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Ellis N. Slack, Howard P. Locke, Sp. Assts. to Atty. Gen., Laughlin E. Waters, U.S. Atty., Edward R. McHale, Asst. U.S. Atty., Los Angeles, Cal., for appellee.
 
 
 3
 Before STEPHENS and FEE, Circuit Judges, and LING, District Judge.
 
 
 4
 LING, District Judge.
 
 
 5
 Taxpayers are husband and wife. In 1944, the taxable year here in question, and prior thereto, the husband was engaged in farming operations in Kern County, California. Part of the land used in this operation was a quarter section leased from one Margaret P. Osborne, under lease dated September 19, 1940. The lease was for five years, commencing November 1, 1941, at a total rental of $4550. Of this amount $700 was payable each year for the first two years and $1050 each remaining year. During the life of the lease, on August 25, 1943, taxpayers agreed with the lessor-owner to purchase the property for a down payment of $8000 and a like amount each year for three years thereafter.
 
 
 6
 On January 9, 1944, without valuable consideration, taxpayers conveyed their interest in the property to their minor daughter. Prior to this transaction they had discussed with their attorney the incident tax consequences. On February 7, 1944, Edward Kirschenmann, a brother of taxpayer, Henry Kirschenmann, was legally appointed guardian of the daughter's estate. Two weeks later the guardian leased the property back to taxpayers for a five year term, commencing July 1944. The lease was a share-crop agreement, under the terms of which in the Fall of 1944 taxpayers paid the guardian $19,412.54 as rental for that year.[1] This represented a substantial part of the amount realized from farming the land. The child took no part in the farming operation and her parents exercised the same control over the property as before; community assets, credit and effort being used in the farming operation. The balance of $24,000 due under the purchase agreement was paid by the guardian with funds from his ward's estate.
 
 
 7
 Parenthetically it may be added, that in December 1943, Edward Kirschenmann conveyed a quarter section of land to his children and his brother Henry was appointed guardian of their estates. As here, a share-crop lease was given the parents. All parties to both transactions were represented by the same attorney.
 
 
 8
 Taxpayers deducted from their 1944 gross community income the amount of $19,412.54 as rental paid. The question for determination is whether this amount was paid as a condition to the continued use of the property for the purposes of their business.[2] The District Court held against taxpayers.
 
 
 9
 It is contended that Skemp v. Commissioner, 7 Cir., 168 F.2d 598, and Brown v. Commissioner, 3 Cir., 180 F.2d 926, support taxpayers' position. We cannot agree. In both of these cases it was held that the rent paid was not unreasonable. Here no like finding was made, nor could such conclusion find support on the record. Taxpayers by the terms of their lease with Mrs. Osborne were obligated to pay only $1050 for the year in question; instead, by their own contrivance, they elected to pay $19,412.54. To say in this situation that such disparity was not the result of a studied attempt to gain a tax advantage would indicate a blindness to reality. It is true, taxpayers divested themselves of title to the property, yet they farmed the land as before, and in effect it was their earning power which formed the basis for the entire transaction, including payment of the purchase price. Tax consequences are determined not from the formal aspect of a transaction, but from the actual substance of a piece of business. What is found here lacks business meaning for tax purposes. This court's decision in Shaffer Terminals, Inc., v. Commissioner, 9 Cir., 194 F.2d 539, is controlling.
 
 
 10
 The instant case involved another issue which was resolved against taxpayers in the District Court. Originally, the Court's ruling on this disputed point was challenged here. However, it now appears that, while this appeal was pending, the parties stipulated that the judgment of the District Court on the question was correct. We have not therefore considered the matter.
 
 
 11
 Affirmed.
 
 
 12
 JAMES ALGER FEE, Circuit Judge (concurring).
 
 
 13
 The majority opinion is correct and sound. However, clarification may assist.
 
 
 14
 The statute provides that there should be allowed as deductions 'rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.' Section 23(a)(1)(A), Internal Revenue Code. Unless taxpayers here had made a transfer of their entire equity, no deduction would be allowable under this section. The deed to their daughter did not convey the fee because they did not own the fee. After the transfer of some interest to their daughter, taxpayers, not their daughter or her guardian, were bound to pay the balance of the purchase price and were still the owners of an equity in the parcel until this was paid. If there had been a default, they would have been the defendants, since they were in possession and were the vendees. After the purchase price had been paid in full, title to the parcel was taken in taxpayers' names.
 
 
 15
 Taxpayers are not entitled to the deduction claimed here, since they have failed to show that the payments were made for the use of 'property to which the taxpayer has not taken or is not taking title or in which he has no equity.' Besides, the payments of the so-called 'rental' were not and could not have been made to the daughter or her guardian under the circumstances 'as a condition to the continued use or possession' of the property.
 
 
 
 [1]
 Following are excerpts from the testimony of Henry Kirschenmann:
 'Q. Then this lease which you made, which you entered into as lessee from your brother Edward in 1944, was the only lease you have entered into, or entered into in this period on a share-crop basis, is that correct? A. That is right.
 'The Court: Did you have any other similar lease on property where you were raising potatoes--
 'The Witness: No.
 'Q. (By Mr. McHale): Have you ever had any since?
 'The Court: That is all the rest of them were cash leases?
 'The Witness: Yes, Sir.
 'The Court: Go ahead.
 'Q. (By Mr. McHale): Have you ever had any since similar to this? A. No.
 'Q. Could you give us an estimate of the number of acres you were farming in and about that period, (1942-3-4), Mr. Kirschenmann? A. Oh, I was farming between 700 and a thousand acres of potatoes through the year.'
 
 
 [2]
 Sec. 23. Deductions From Gross Income
 'In computing net income there shall be allowed as deductions:
 '(a) (as amended by Sec. 121(a) of the Revenue Act of 1942, c. 619, 56 Stat. 798) Expenses
 '(1) Trade or Business Expenses.
 '(A) In General. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, or property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *' 26 U.S.C. 1946 ed., 23.