OPINION The essence of what we have here, when considered with regard to substance, is a carefully prearranged plan to fund trusts for the benefit of the children of the senior executives of the Sarong corporation, through: (1) “Spinning off” the foreign patent rights of said corporation into a partnership composed of the corporation’s junior executives (who were beneficiaries of three of the newly created children’s trusts) ; and (2) funneling the bulk of said partnership’s income from its use of such foreign rights into said children’s trusts. The icing on the cake, so to speak, was that (under such plan) most of the income from said foreign patent rights would never bear the burden of any Federal income taxes, although it would be earned by a domestic partnership. Avoidance of taxes would be achieved by interposing the Bermuda trusts between the corporation and the partnership through: Having the corporation “sell” the foreign patent rights to the trusts; having the trusts concurrently “grant” the partnership the exclusive right to license foreign users; and then having the partnership, as “compensation” for such grant, pay over to the trusts 90 percent of its net proceeds from the exploitation of said foreign rights. Thus, the partnership’s net income would, by use of a “deduction” for the amount so paid over to the trusts, be reduced to a relatively insignificant amount; and the trusts (being in Bermuda and beyond the reach of the Federal taxing statutes) would not pay any Federal taxes on the amounts which they would receive from the partnership. Still other features of the plan completed the tax avoidance picture: (1) The trustees, by not distributing to their beneficiaries any of the amounts which they would thus receive from the partnership, would prevent any of said amounts being currently taxable to the beneficiaries; and (2) upon any subsequent termination of the trusts, which could occur" at any time after 10 years and 18 days, all principal and accumulated income of the trusts would become available to the beneficiaries, tax free. Also, by having the partnership retain the entire foreign tax credit paid by it with respect to both the portion of the income which it retained and also the portion which it remitted to the trusts, the partners would avoid most of the tax on their retained portions. We think that the plan, advantageous though it might have appeared to all parties involved, is defective taxwise. It is necessary, in the first place, to consider what precisely is the issue before us; and whether the petitioners on brief actually have directed their arguments to meeting such'precise issue. As we have heretofore pointed out in our Findings of Fact, the particular income which the Commissioner in his notice of deficiency determined to be taxable to the petitioners is the amounts of $11,779.40 and $14,146.25 which the Hum partnership paid to the trusts in 1957 and 1958. The evidence discloses that the partnership, in paying over these amounts to the trusts, took deductions therefor as ordinary and necessary business expenses, so as to reduce the amounts of the distributive shares of its net income which otherwise would have been available to its partners (including petitioner Egbert Miles); and accordingly, that the amounts of taxable income from partnerships which petitioners Egbert Miles and his wife reported in their joint returns for the years involved, were substantially less than what they would have been if such deductions had not been taken by the partnership. Hence, the determinative factor in deciding whether the Commissioner’s determination should be approved is, as we see it, whether the amounts which the Hum partnership paid over to the trusts legally qualify for deduction as ordinary and necessary expenses of the partnership. If they do not so qualify as deductions, then it will follow that the Commissioner’s determination must be approved.[2] Thus viewing the case as we do, it seems to us that the situation here presented is merely a variation of a familiar situation, to wit: Where assets used in a business are purportedly “sold,” pursuant to a prearranged plan, to a trust for the benefit of family members; where the purported “vendee” thereupon makes a leaseback of the same assets to the “vendor”; and where the “vendor” then seeks to reduce his taxable income by claiming a deduction for the amojmts paid over to the “vendee” under the leaseback arrangement. Such a case was recently considered by us in I. L. Van Zandt, 40 T.C. 824. In that case, the taxpayer, who was a physician, owned a building and certain equipment which he used in his medical practice. He created two 10-year irrevocable trusts for the benefit of his children, naming himself as trustee; purported to “sell” to such trusts both the building and the equipment; and then the “vendee” trusts, on the same day, leased back the same properties to the taxpayer, who thereafter con-tinned to use the same in the practice of his profession. The taxpayer thereafter deducted the ostensible rental payments which he made to the trusts under the leaseback arrangement. The Commissioner disallowed the claimed deduction; and we sustained the Commissioner’s action. In our opinion in that case, we held that the claimed deduction was not allowable, stating in part : Moreover, it is well recognized that intra-family transactions resulting in the distribution of income within a family unit are subject to the closest scrutiny. Helvering v. Clifford, 309 U.S. 331 (1940); Commissioner v. Tower, 327 U.S. 280 (1946). Where, as here, the trusts and leasebacks are steps in a prearranged transaction, we think it is necessary to examine the true nature of the transaction and aim our inquiry at seeing if the net effect has been a shift of family income. * * * It would seem that economic reality, rather than the validity of the documents creating the trusts, the transfers and the leases, must serve as the basis upon which the right to the deduction rests. To hold for the petitioner would be inconsistent with another line of decisions. Where a sale and lease-back does not serve a utilitarian business purpose, but is in reality a camouflaged assignment of income, the expenses have not been considered “ordinary and necessary.” See W. II. Armston Co. v. Commissioner, 188 P. 2d 531 (C.A. 5, 1951), affirming 12 T.C. 539 (1949); Unger v. Campbell, 7 A.F.T.R. 2d 547 (N.D. Tex. 1960) ; and White v. Fitzpatrick, 193 F. 2d 398 (C.A. 2, 1951) certiorari denied 343 U.S. 928. The same result has been reached where the transfer was in the form of a gift. Johnson v. Commissioner, 86 F. 2d 710 (C.A. 2, 1936), affirming 33 B.T.A. 1003 (1936). * * * In addition to the cases cited in the above quotation, see to the same effect Kirschenmann v. Westover, 225 F. 2d 69 (C.A. 9). See also Rev. Rul. 54-9, 1954-1 C.B. 20. The variation between the usual leaseback situation represented by the Van Zandt case and the situation in the instant case is that here, instead of having a leaseback to the “vendor” by the trust, we have a “leaseover” to a related organization, i.e., to a partnership whose members were not only children of the senior executives of the “vendor” corporation but who also were themselves stockholders and executives of the “vendor” corporation. This variation presents a situation similar to that involved in Ingle Coal Corporation, 10 T.C. 1199, affd. 174 F. 2d 569 (C.A. 7). In this Ingle case, corporation A distributed in liquidation to its stockholders, all its assets (including certain mining leases on which it was paying royalties to the landowner) ; and these stockholders then, acting pursuant to a prearranged plan, immediately conveyed these same assets to the newly created taxpayer, corporation R, partly for stock and partly for an agreement under which the taxpayer was to pay the stockholders an additional overriding royalty on each ton of coal mined from the properties. The Commissioner disallowed the deduction claimed by corporation B for these overriding royalties. We affirmed such determination, stating in part: In effect, petitioner received from tbe old corporation, not its shareholders, just what the old corporation had, namely, the right to continue mining coal under the lease. This is so regardless of the possibly enforceable obligation of the petitioner corporation, as between it and the shareholders, to pay the overriding “royalty.” * * * In short, under no aspect of the evidence, have we found or can we find that the petitioner corporation intended to or did receive any actual consideration for agreeing to pay this additional five-cent “royalty.” The series of transactions constituted integrated steps in a single plan and must be so considered for tax purposes, which resulted in an unnecessary “obligation” upon the part of petitioner to pay the so-called overriding “royalty.” * * * [Citing cases.] We think, under the circumstances, the payment of this additional 5 cents per ton as an overriding “royalty” was a distribution of corporate profits to the stockholders receiving the same and therefore was not a deductible expense, either as a “royalty” or otherwise. * * * In the instant case, the position of the Bermuda trusts is similar to that occupied by the stockholders in the Ingle case. Both, acting pursuant to a prearranged integrated plan, purported to acquire the income-producing assets of a business; thereupon purported to immediately make these same assets available to a newly created business organization, through contractual arrangements under which both sought to extract a charge from the new business for the latter’s use of such assets. Also, the position of the partnership in the instant case is similar to that of the new taxpayer corporation in the Ingle case; for each earned the income that it disposed of under the contractual arrangement, and each claimed deductions for the payments which it made under such arrangement, as ordinary and necessary expenses of its business. Just as both this Court and the Seventh Circuit disallowed the deductions claimed in the Ingle case, we likewise in the instant case conclude that the claimed deductions should be disallowed. It is our opinion, based on our consideration and weighing of all the evidence herein, that the Bermuda trusts acted merely as conduits through which the foreign patent rights were passed from the Sarong-corporation to the Hum partnership. This becomes evident when consideration is given to the following facts revealed in the record. The integrated plan was all prearranged prior to the creation of the trusts which performed an essential part in the carrying out of the plan. The purported transfer of the foreign patent rights from the Sarong corporation to the trusts was for a grossly inadequate consideration ; for such “consideration” was only $17,500, notwithstanding that the foreign rights transferred, yielded very large amounts of income both prior and subsequent to the transfer, and also that the fair market value thereof was, as we have hereinabove found, not less than $300,000. The amount of even such nominal “consideration” equaled the amount of all assets which the trusts had theretofore acquired, both as corpus and as loans from the grantors. Both the purported purchase of the rights by the trustees, and also the purported retransfer of the same to the partnership, were accomplished without prior notice being given to the trusts’ investment advisory committee, as specifically required by paragraph Tenth (K) of the trust agreements. And following these purported transfers, the members of tlie partnership (one of whom had theretofore handled the foreign patent rights for the Sarong corporation) managed and operated these foreign patent rights, and earned all the income which they produced. It seems obvious to us that the trusts were never intended to acquire, and did not acquire, and substantial interests in said foreign patent rights; and in the absence of such substantial interest, there was no warrant or true consideration for the partnership paying over to the trusts 90 percent of its net income, under the guise of such payments being ordinary and necessary expenses of producing that income. The Supreme Court’s decision in Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179 (a case which the Court of Appeals for the Seventh Circuit cited in affirming the decision of this Court in the Ingle case), provides authority for the principle that “Transitory phases of an arrangement frequently are disregarded under * * * the revenue acts where they add nothing of substance to the completed affair.” To the same effect see Gregory v. Helvering, 293 U.S. 465. We regard the cases of Brown v. Commissioner, 180 F. 2d 926 (C.A. 3), reversing 12 T.C. 1095; Skemp v. Commissioner, 168 F. 2d 598, reversing 8 T.C. 415; Albert T. Felix, 21 T.C. 794, and John T. Potter, 27 T.C. 200 (in which rentals paid under leaseback arrangements were held to be deductible), to be distinguishable on their facts. There, it was decided that the trusts had acted independently in arm’s-length transactions. In the instant case, to the contrary, we are impelled to conclude that the five Bermuda trusts here involved did not function independently in arm’s-length transactions, when they participated in carrying out the prearranged integrated plan for shifting the foreign patent rights from the Sarong corporation to the partnership. We hold that the amounts of $11,779.40 and $14,146.25, which were paid in the taxable years 1957 and 1958 by the Hum partnership to the two trusts established for the petitioners’ benefit, do not qualify for deduction as ordinary and necessary business expenses of the partnership ; that said amounts constitute part of Egbert’s distributive share of the partnership’s net incomes for said taxable years; and that said amounts should have been included by Egbert and his wife in the income from partnerships which they reported on their joint income tax returns for said years. We sustain the Commissioner’s determination that said amounts constitute income taxable to the petitioners for the taxable years involved. By reason of our above holding, it is unnecessary for us to consider respondent’s alternative contention regarding the credits for foreign taxes paid by the partnership. Decision will be entered for the respondent. Both parties in their briefs appear to have taken an approach to the problem which is different from ours. They seem to have regarded the question to be whether the petitioners, in their capacity as "beneficiaries of the trusts, are taxable with undistributed trust income3 either because the trusts were illusory or were subject to their “control” ; whereas we think it obvious from a reading of the Commissioner’s determination that the income sought to be taxed is partnership income which was distributable to Egbert Miles as one of the partners, and hence includable by him and his wife on their joint income tax returns. The Commissioner in his notice of deficiency made no reference whatever to any income in the hands of the trustees, whether distributable or nondistributable.