**C. P. and Helen BROOKE, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 25069.**

United States Court of Appeals,
Ninth Circuit.

July 26, 1972.

---

**1156**

Grant W. Wiprud, Atty. (argued), Lee A. Jackson, Janet R. Spragens, Attys., Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Otis L. Packwood, U. S. Atty., Butte, Mont., for defendant-appellant.

John R. McInnis, (argued), of Garlington, Lohn & Robinson, Missoula, Mont., for plaintiffs-appellees.

Before ELY and WRIGHT, Circuit Judges, and POWELL, District Judge.*

POWELL, District Judge:

This suit seeks refund of federal income taxes paid in the years 1960, 1961 and 1962. The District Court entered judgment for the taxpayer on December 9, 1968, 292 F.Supp. 571 (1968). It amended the judgment on June 23, 1969, 300 F.Supp. 465 (1969). The United States has taken this appeal.

* Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

The taxpayer is a physician who practices medicine in Missoula, Montana. His family in 1959 included six children from ages 6 to 14. His income during the years in issue varied between $26,000 and $30,000. As a gift he deeded to his children real estate which was improved by a pharmacy, a rental apartment, and the offices of his medical practice. Following the conveyance the Montana State Probate Court appointed the taxpayer as guardian of the children. In this capacity the taxpayer collected rents from the pharmacy and apartment. Without a written lease, he also paid to himself as guardian for his children the reasonable rental value of his medical offices. The rents so collected were applied to the children's insurance, health and education. Expenditures were made for private school tuition, musical instruments, music, swimming and public speaking lessons. The taxpayer also purchased an automobile for his oldest child, and paid travel expenses to New Mexico for his asthmatic child.

The fundamental issue presented involves the sufficiency of the property interest transferred. The transfer of a sufficient property interest justifies the taxation of the donees and the deduction of the rental payments under 26 U.S.C. § 162(a) (3) as ordinary and necessary business expenses by the donor.

■ In analyzing gift and leaseback cases, several factors must be considered: (1) the duration of the transfer; (2) the controls retained by the donor; (3) the use of the gift property for the benefit of the donor; and (4) the independence of the trustee. See, e. g., White v. Fitzpatrick, 193 F.2d 398 (2d Cir. 1951). None of the above factors prevents the income from being shifted in the instant case.

No issue is presented here as to the duration of the transfer—it was absolute and irrevocable; it was by warranty deed, unconditioned and unencumbered. See, e. g., Kirschenmann v. Westover, 225 F.2d 69 (9th Cir. 1955) (encumbered transfer). The absolute nature of the transfer distinguishes this case from those urged as controlling by the Government. See, e. g., Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940) (five year trust); Van Zandt v. Commissioner of Internal Revenue, 341 F.2d 440 (5th Cir. 1965) (ten year two month trust).

■ The taxpayer in this instance retained few, if any, controls over the trust property. He was obligated to and did pay the reasonable rental value of his medical offices. The fact that there was no written lease dispels any argument that the tenancy actually amounts to a reversion; the guardianship could at any time terminate the month to month tenancy. Likewise the taxpayer could at any time be terminated as guardian. Other controls retained over the trust property were consonant with possession as a tenant. Accordingly the findings of the District Court regarding both the irrevocable nature of transfer and the necessity of making rental payments are not clearly erroneous. This is in marked contrast with Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), where the taxpayer who assigned royalty agreements to his wife retained corporate control over the royalty agreements with the power to determine the amount of interest paid to his wife.

It is also apparent that trust benefits have not inured to the taxpayer as donor. The rental payments were expended solely for the insurance, health and education of the children. As discussed later, the taxpayer was not legally obligated to provide these benefits for his children.

■ Many decisions pivot on the issue of the independence of the trustee. See, Van Zandt v. Commissioner of Internal Revenue, 341 F.2d 440 (5th Cir. 1965); Brown v. Commissioner of Internal Revenue, 180 F.2d 926 (3d Cir. 1950); Ingle Coal Corp. v. Commissioner of Internal Revenue, 174 F.2d 569 (7th Cir. 1949); Skemp v. Commissioner of Internal Revenue, 168 F.2d 598 (7th Cir. 1948); Penn. v. C. I. R., 51 T.C. 144

**1158**

(1968); Alden B. Oakes, 44 T.C. 524 (1965); Albert T. Felix, 21 T.C. 794 (1954). The necessary independence of the trustee is achieved in a guardianship. The Montana Probate Court administers a guardianship with the same requisite independence of any court-administered trust. See, Mont.Rev.Codes §§ 91–4507, 4510, 4520 and 4522. Under the scrutiny of the court rental obligations must be met and accountings made. Mont.Rev.Codes § 91–4907. Guardianship property cannot be sold without court approval. Mont.Rev.Codes § 91–4518. Without belaboring the point there should be no lack of confidence in the supervision by our courts. A court appointed trustee—even though the taxpayer—offers sufficient independence.

If the taxpayer should at some future date breach his fiduciary duty toward his children, the government might well renew its challenge to the validity of the gift.

It must be emphasized that this transfer is not a sham or fraud. The Government adamantly asserts that this transfer lacks a business purpose, which therefore disqualifies it for a business deduction. Several leading cases employ such language. See, e. g., Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Van Zandt v. Commissioner of Internal Revenue, 341 F.2d 440, 443–444 (5th Cir. 1965); Commissioner of Internal Revenue v. Transport Trading & Term. Corp., 176 F.2d 570, 572 (2d Cir. 1949). Other cases require only that the transfer be grounded in substantial economic reality. See, Alden B. Oakes, 44 T.C. 524 (1965); Albert T. Felix, 21 T.C. 794 (1954). Cf. Gilbert v. Commissioner of Internal Revenue, 248 F.2d 399, 406 (2d Cir. 1957). Alden B. Oakes, 44 T.C. 524 (1965), expressly eschews the "business purpose" test. See also, Skemp v. Commissioner of Internal Revenue, 168 F.2d 598 (7th Cir. 1948); John T. Potter, 27 T.C. 200 (1956). However, a transfer solely to avoid taxes will not be recognized. Gregory v. Hel-

vering, 293 U.S. 465, 55 S.Ct. 266, 79 L. Ed. 596 (1935); Audano v. United States, 428 F.2d 251 (5th Cir. 1970).

■ The non-tax motives, as borne out by the record, are abundant and grounded in economic reality. The taxpayer desired to provide for the health and education of his children (RT 17, 18, and 21); avoid friction with partners in his medical practice (RT 18); withdraw his assets from the threat of malpractice suits (RT 21); and diminish the ethical conflict arising from ownership of a medical practice with an adjoining pharmacy. Neither substance nor impact denies this transfer professional or economic reality. This finding by the District Court is not clearly erroneous.

■ The Government further argues that even if deductions under 26 U.S.C. § 162(a) are allowable, expenditures for the children's benefit merely serve to satisfy the taxpayer's legal obligations to support them imposed by 26 U.S.C. § 677(b) and therefore are not allowable. The District Court determined that Rev.Rul. 56–484, 1956–2 Cum.Bull. at 23, establishes the applicability of local law in construing the meaning of support in Section 677(b). Montana law provides:

"The parent entitled to the custody of a child must give him support and education suitable to his circumstances." Mont.Rev.Codes § 61–104.

The District Court held that the expenditures made were not the legal obligations of the taxpayer under Montana law. The only authority cited by the Government which suggests the contrary, Refer v. Refer, 102 Mont. 121, 56 P.2d 750 (1936), is entirely limited to its facts.

■ The last issue in this appeal is raised by the taxpayer: Does a court administered guardianship constitute a trust under 26 U.S.C. § 677(b)? Section 677 (or any regulation thereunder) does not refer to guardianships. However, the meaning of "trusts" is very broad and is specifically found in Section 641. Montana law, as interpreted

by the District Judge, 292 F.Supp. at 572–573, includes guardianships within the meaning of "trusts." While a guardianship does not possess all trust requisites, for the purposes of taxation under Section 677, it must be considered a trust.

Affirmed.

ELY, Circuit Judge (dissenting):

I vigorously, although respectfully, dissent. The majority's opinion disturbs me for two principal reasons. First, I think it disregards the fundamental consideration that we are bound by prior decisions of our very own. *See* Etcheverry v. United States, 320 F.2d 873, 874 (9th Cir. 1963). Secondly, by creating yet another legal standard under which to assess the tax consequences of a "gift and leaseback" transactions, the majority, in my judgment, adds further inconsistency to an area of tax law that is already fraught with too much semantic confusion.

Our decision controlling the tax treatment of a gift and leaseback transaction is Kirschenmann v. Westover, 225 F.2d 69 (9th Cir.), cert. denied, 350 U.S. 834, 76 S.Ct. 70, 100 L.Ed. 744 (1955), wherein we held

> "Tax consequences are determined not from the formal aspect of a transaction, but from the actual substance of a piece of business. What is found here lacks *business meaning* for tax purposes. This court's decision in Shaffer Terminals, Inc. v. Commissioner of Internal Revenue, 9 Cir., 194 F.2d 539 [1952], is controlling." 225 F.2d at 71. (emphasis added)

In *Shaffer Terminals,* which involved a sale and leaseback transaction, we affirmed the Tax Court's disallowance of rental deductions, relying on the decision of the Tax Court and the then recently pronounced decisions of our Brothers of the Second and Fifth Circuits in White v. Fitzpatrick, 193 F.2d 398 (2d Cir. 1951), cert. denied, 343 U.S. 928, 72 S.Ct. 762, 96 L.Ed. 1338 (1952) (gift and leaseback), and W. H. Armston Co. v. Commissioner of Internal Revenue, 188 F.2d 531 (5th Cir. 1951) (sale and leaseback); *accord,* Van Zandt v. Commissioner of Internal Revenue, 341 F.2d 440 (5th Cir.), cert. denied, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed. 2d 62 (1965) (gift and leaseback). The prior law in our Circuit, therefore, as in the Second and Fifth Circuits, has been that both a sale and leaseback and a gift and leaseback transaction will be subjected to scrutiny under the "business purpose" test. Under that test, rentals cannot be treated as a valid business expense under Section 162 unless there is a legitimate business purpose motivating the transfer of the leased property. I have found no subsequent case in this Circuit that eschews the business purpose test, nor have I perceived its erosion in the other Circuits which follow the same standard. *See, e. g.,* Chace v. United States, 303 F.Supp. 513, 516 (M.D.Fla.1969), aff'd, 422 F.2d 292 (5th Cir. 1970). Hence, since the District Court here found as a fact that "[t]he transfer did not serve any substantial business purpose," [1] I would, unlike the majority, reverse on the basis of the binding effect of our prior decision

---

1. I must emphasize that this was the only finding made by the trial court concerning the taxpayer's motivation for making the transfer. The importance of this circumstance is that the quoted finding negates the existence of the "non-tax motives" which the majority impermissibly gleans from the taxpayer's own testimony. It is obvious to me that the trial judge's finding of a lack of business purpose necessarily entailed that court's rejection of the taxpayer's self-serving assertions, now accepted by the majority, that he was motivated by either (1) a desire to avoid friction with his partners, (2) a need to protect his assets from malpractice judgments, or (3) a response to his ethical obligation to divorce himself from technical, legal ownership of the pharmacy. As I read the record, it offers no support for the majority's statement amounting to a belated factual determination at the appellate level, that the "non-tax motives . . . [were] abundant . . . ."

in Kirschenmann v. Westover, *supra.* *See* Etcheverry v. United States, *supra.*

Having stated the primary ground for my concern, I would not ordinarily feel compelled to comment further on the composition of the majority's opinion. Yet, I do feel so compelled in this instance. While I do not share their view, I can understand my Brothers' reluctance to apply the business purpose test to a gift and leaseback transaction. Early cases adopting the business purpose test for a gift and leaseback transaction failed to recognize that a gift, unlike a sale of business property, is not motivated by a business purpose. Yet this distinction is important only if the gift and subsequent leaseback are viewed as separate and independent transactions. The bifurcation approach adopted by the majority does find some support in the decisions of other courts. *See, e. g.,* Brown v. Commissioner of Internal Revenue, 180 F.2d 926 (3d Cir.), cert. denied, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950); Oakes v. Commissioner, 44 T.C. 524, 532 (1965). Therefore, I cannot honestly dismiss my Brothers' position on this point as being wholly unreasonable, even though I am convinced that the better approach requires an integration of the gift and leaseback transactions, at least in cases in which the donor-lessor was an occupant of the premises at the time the gift was made. When the transactions are thus integrated, it becomes obvious that the allowance of rental deductions requires satisfaction of the business purpose test at the inception of the transaction, the time when the gift was made. *Cf.* Kirschenmann v. Westover, *supra;* White v. Fitzpatrick, *supra.*

Even conceding the reasonableness of the majority's acceptance of the bifurcated transaction approach, I cannot acquiesce in its proposal of yet another test under which to judge a gift and leaseback. As I read the majority opinion, the standard formulated is that in order for the transaction to be recognized for tax purposes, the gift must be founded upon economic reality and must divest the donor of substantial control over the property. Such a test is unique in several respects. While my Brothers purport to rely on the Tax Court's rejection of the business purpose test, they do not adopt that court's formulation of the controlling legal standard:

"The mere transfer of legal title to property, however, is not conclusive for Federal income tax purposes, for the 'sale' that lacks economic reality and business purpose, and the 'gift' that leaves the donor with substantially the same control over the property that he had before, will simply be disregarded."

Penn v. Commissioner, 51 T.C. 144, 149–150 (1968).

In fashioning its new legal standard, the majority has excised one critical element from the appropriate test for the ascertainment of the validity of a sale and leaseback transaction—economic reality. Moreover, the majority directs its crucial inquiry not to the degree of control *retained* by the donor, as required by the Tax Court's analysis in Penn v. Commissioner, *supra,* but to the amount of control the donor *surrendered* in making the transfer. Here, the taxpayer, as sole guardian, had complete managerial powers over the property. He set the amount of the rentals, determined the terms, if any, of the unwritten lease, and decided when, if ever, the rentals were to be paid. He retained the power to mortgage, sell, or otherwise encumber or convey the property, the only impediment being that any such action on his part required, at some time, the approval of the court which had appointed him as the guardian of the estates of his children. I therefore find the majority opinion wholly at odds with the Tax Court's analysis in *Penn.* Viewed realistically, the situation here is that the taxpayer has retained "substantially the same control over the property that he had before." I cannot stretch my imagination so far as to believe that the taxpayer had an independent role, apart from his fatherhood and consistent occupancy and control, simply

by virtue of some speculative degree of state court supervision over his supposed fiduciary operations.

The two standards which I recognize as being applicable to a case of this nature—the business purpose test, which should have bound us, and the standard relating to the donor's retention of control, which is applicable in the Tax Court—represent judicially imposed restrictions on the availability of a gift and leaseback transaction to effectuate a tax avoidance scheme premised upon intra-family income splitting. As I view these standards, they are interrelated. If a transaction is grounded upon economic reality and business purpose, then perhaps the majority's view as to the minimal independence of the fiduciary could, by some, be accepted. If, however, more leeway is given in the first instance by requiring only economic reality to support the transfer, then a much greater degree of independence should be required of the fiduciary. In my opinion, the necessary independence cannot exist when all managerial powers are retained by the transferor-lessor. *See, e. g.,* Penn v. Commissioner, *supra* at 153–154. It seems obvious to me, under the facts of this case, that neither of the two recognized tests can be applied to the taxpayer's advantage.

In conclusion, I think it not inappropriate to mention a responsible newspaper's [2] report of recent comments attributed to Congressman Reuss of Wisconsin. According to the account the Congressman was concerned with "tax loopholes said to cost the government an estimated $7.25 billion in taxes every year." If such "loopholes" exist by reason of Congressional action or inaction, it is not the function of the courts to close them. At the same time, it seems to me that the courts should be reluctant unnecessarily to create new "loopholes." The impact of this particular case, considered alone, is relatively insignificant. I deplore the majority's action, however, in fashioning a new legal standard to validate the District Court's otherwise unjustifiable judgment. It clearly opens the way for other affluent parents, like the taxpayer here, to push much of the burden of their personal expenses onto the shoulders of the less fortunate of their fellow citizens.

I would reverse.

---

2. The Los Angeles Times, March 20, 1972.