T.C. Memo. 1998-164


UNITED STATES TAX COURT


PRINDLE INTERNATIONAL MARKETING, UBO,
KEYUS GROUP, TRUSTEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROLAND R. AND VIRGINIA A. FOX, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 5907-96, 7178-96.[1]    Filed May 5, 1998.


<u>Robert E. Kovacevich</u>, for petitioners.

<u>Sandra Veliz</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioners were

liable for the following deficiencies in income tax, addition to

tax, and penalty:

_____

[1] The cases of Prindle International Marketing, UBO, Keyus
Group, Trustee, docket No. 5907-96, and Roland R. and Virginia A.
Fox, docket No. 7178-96, were consolidated for trial, briefing,
and opinion by order of this Court dated May 27, 1997.

### Roland and Virginia Fox

| Year | Deficiency | Addition to tax Sec. 6651 | Penalty Sec. 6662(a) |
|---|---|---|---|
| 1989 | $16,298 | -- | $3,260 |
| 1992 | 47,758 | -- | 3,848 |
| 1993 | 62,892 | $15,473 | 12,578 |

### Prindle International Marketing, UBO
### Keyus Group - Trustee

| Year | Deficiency | Addition to tax Sec. 6651 |
|---|---|---|
| 1992 | $32,508 | $8,127 |
| 1993 | 54,068 | 13,517 |

We must decide the following issues:

1.   Whether petitioners are entitled to have Roland Fox's diary admitted into evidence or to use it during his testimony to refresh his recollection where petitioners had not exchanged it as required by the Court's standing pretrial order or produced it in response to a discovery request.  We hold that they are not.

2.   Whether Prindle International Marketing is a sham.  We hold that it is, and we do not recognize it for Federal income tax purposes.

3.   Whether petitioners Roland and Virginia Fox may deduct $100,000 as contributions to a welfare benefit plan in 1992.  We hold that they may not.

4.   Whether respondent's determination that petitioners Roland and Virginia Fox received $2,237 in unreported interest income in 1993 was arbitrary.  We hold that it was.

5.    Whether petitioners Roland and Virginia Fox are liable for self-employment tax of $10,658 for 1992 and $11,057 for 1993. We hold that they are.

6.    Whether petitioners Roland and Virginia Fox are liable for the addition to tax for failure to file under section 6651 for 1993 and the accuracy-related penalty for negligence under section 6662(a) for 1989, 1992, and 1993.  We hold that they are.

7.    Whether petitioner Prindle International Marketing is liable for the addition to tax for failure to file under section 6651 for 1992 and 1993.  We hold that it is not.

Section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

A.    Roland and Virginia Fox

Roland and Virginia Fox (Mr. and Mrs. Fox) were married in 1980 and lived in Spokane, Washington, when they filed their petition.  They each have three children from prior marriages.

Mr. Fox joined the U.S. Air Force in 1952.  He retired in 1972.  He received about $22,000 in military retirement pay per year in 1992 and 1993.  He and his family moved to Spokane, Washington, in November 1973.  There he earned a bachelor of arts degree in Russian history.  He also enrolled in a graduate business administration program at Eastern Washington University, where he took one tax course.  He attended a school for insurance

agents in Chicago, Illinois, and took estate planning courses from the New England Life Insurance Co. Mrs. Fox had no training in tax.

During the years in issue, Mr. and Mrs. Fox owned 15 or 16 rental mobile homes, 2 rental houses, and an apartment building. Mrs. Fox managed their real estate rental business before and after they created the trust at issue.

Mike Dunn (Dunn), a certified public accountant, prepared Mr. and Mrs. Fox's income tax returns from 1986 to the time of trial.

B.  Oxyfresh

Oxyfresh USA, Inc. (Oxyfresh), is a network marketing (also known as multilevel marketing, described further below) company which began operating in 1983. Oxyfresh sold personal care, pet care, nutrition, dental hygiene and skin care products, a quit-smoking program, and air purifiers.

Mr. Fox sold Oxyfresh products and recruited other people to sell Oxyfresh products. The distributors Mr. Fox recruited could also recruit other people to distribute Oxyfresh products.

Mr. Fox engaged in this activity in 1983 and every year thereafter. He received a commission for selling Oxyfresh products. He received a smaller commission on sales made by distributors. In 1992, Mr. Fox traveled 3 weeks per month in the United States and Canada conducting Oxyfresh training and motivational seminars. Because of his efforts for Oxyfresh, Mr.

Fox earned a percentage of the worldwide sales of Oxyfresh.  In the years in issue, Mr. Fox owned 250,000 of 53 million shares that Oxyfresh had issued.

In the years in issue, Mr. Fox had a contract with Oxyfresh, a copy of which is not in the record, entitling him or Prindle to receive payments from Oxyfresh if he performed in accordance with the contract.  Mr. Fox agreed that he would not sell for Oxyfresh competitors or falsely advertise Oxyfresh products.

At a time not stated in the record, Mr. Fox stopped receiving a percentage of Oxyfresh sales that were made through the efforts of other Oxyfresh distributors.  However, Oxyfresh created another position for which Mr. Fox qualified, and Mr. Fox again received a percentage of the worldwide sales of Oxyfresh.

From 1983 to 1991, Oxyfresh issued Forms 1099 to Mr. Fox. Mr. Fox reported his income from Oxyfresh on a Schedule C, Profit or Loss from Business.  In 1992, Oxyfresh paid between $15,000 and $18,000 per month for Mr. Fox's services.

## C.  Prindle International Marketing

Around 1985, Mr. Fox asked Mrs. Fox's uncle, Dan Giboney (Giboney), an attorney, about different forms in which to conduct his Oxyfresh business, including a living trust, C or S corporation, or partnership.  Mr. Fox also spoke to an attorney (not named in the record) who specialized in trusts and Mike Dunn (Dunn), Mr. Fox's accountant, about forms in which to conduct the Oxyfresh business.  They told him that he could conduct his

Oxyfresh business as a regular corporation, an S corporation, or a business trust. In 1989 or 1990, Mr. Fox met Larry Smith (Smith) who recommended that Mr. Fox not incorporate his Oxyfresh business. The record does not describe Smith's professional qualifications.

In June 1991, Mr. and Mrs. Fox decided to form a business trust.[2] Smith formed an entity called Prindle International Marketing (Prindle) for Mr. and Mrs. Fox in California, on June 21, 1991.

On July 1, 1991, Smith wrote several documents in Sacramento, California, which purported to make Prindle a business trust of which Mr. and Mrs. Fox were the beneficiaries. Smith signed the documents as creator.

On July 10, 1991, the U.S. Treasury Department issued an employer identification number to Prindle.

On January 2, 1992, Mr. and Mrs. Fox opened a checking account under the name Prindle International Marketing (Prindle account). They were the only persons authorized to sign checks on the Prindle account.

---

[2] We use the words "business trust", "trust", "trust documents", "trustee", "grantor", "transferor", "form", "establish", and "agent", in our findings of fact for narrative convenience. We do not intend our use of those terms to indicate any conclusion about the substance of the transactions at issue.

Mr. Fox asked Oxyfresh, and Oxyfresh agreed, to make checks that would have been payable to him after February 1992 payable to Prindle.

On September 8, 1993, Mr. Fox applied to the Washington State Department of Licensing for Business License Services for a business license. In the application, Mr. Fox stated that Prindle is a business which sells health-related products.

On December 21, 1993, Mr. Fox signed a Washington State corporate license renewal/annual report for Prindle. In it, he stated that Prindle was in the business of wholesale marketing, and that he was president and trustee and Mrs. Fox was treasurer.

Mr. Fox did not give Dunn any information about the trust. Prindle did not file Federal income tax returns for 1992 or 1993.

Mr. and Mrs. Fox operated their real estate and Oxyfresh businesses after Prindle was formed just as they had done before Prindle was formed. After Prindle was formed, Mr. Fox purportedly did business as an agent for Prindle. Mr. and Mrs. Fox directed income from their real estate and Oxyfresh businesses to Prindle.

Prindle had no employees and issued no Forms W-2.

D.   Employers Trust 2000

On December 30, 1992, Mr. Fox signed a document entitled "Adoption and Participation Agreement" which stated that he was a sole proprietor and that he was requesting to participate in a trust called Employer Trust 2000. The Adoption and Participation

Agreement said that it was effective January 1, 1992. The Adoption and Participation Agreement provided group term life insurance coverage for Mr. Fox. On December 30, 1992, Mr. Fox signed a document entitled "QNC Contribution Instructions" which states: "Contribution amount $100,000". On that day, Mr. Fox also signed a document entitled "Collateralized Personal Line of Credit Instructions" which states: "Amount to be wired $85,000".

OPINION

A. Exclusion of Mr. Fox's Diary

Petitioners' counsel wanted Mr. Fox to use his diary to refresh his recollection at trial about his 1992 expenses. Respondent objected on the grounds that petitioners had not exchanged the diary 15 days before the call of the calendar as required by the Court's standing pretrial order served on petitioners about 5 months before trial and that petitioners had not indicated that the diary existed in response to respondent's discovery request. Petitioners' counsel said that he had not known that Mr. Fox kept a diary. The Court sustained respondent's objection.

Petitioners contend that the Court erred in excluding Mr. Fox's diary from evidence and in not allowing Mr. Fox to use his diary to refresh his recollection. We disagree.

Respondent's counsel said at trial that respondent had asked petitioners to produce any documents which relate to petitioners' claims that there should be a decrease in taxable income as

determined by respondent. Petitioners' counsel did not dispute that claim.

Petitioners contend that the diary is admissible and may be used to refresh Mr. Fox's memory under rule 612 of the Federal Rules of Evidence. We disagree. The diary fell within the scope of respondent's discovery requests but was not produced during discovery or exchanged as required by the Court's pretrial order. See G.J.B. & Associates, Inc. v. Singleton, 913 F.2d 824, 831 (10th Cir. 1990). In the Singleton case, the plaintiffs had not exchanged discoverable documents as required by the Court's pretrial order and sought to use the documents to refresh a witness' memory. The U.S. Court of Appeals for the Tenth Circuit rejected the assertion that, because the notes were being used to refresh the memory of a witness for the plaintiffs, their counsel had no duty to reveal the notes. Id. We conclude that respondent properly objected to the admission of the diary into evidence and to Mr. Fox's use of the diary to refresh his recollection at trial.

B.   Whether To Recognize Prindle as a Trust for Federal Tax Purposes

1.   Mr. and Mrs. Fox Retained Control Over the Purported Trust Assets

Respondent contends that Prindle should not be recognized for Federal income tax purposes because it is a sham. Petitioners contend that Prindle is not a sham.

A trust may be a sham for Federal tax purposes if the grantor retains control over the property or income placed in the trust and does not change how the property or income is treated. United States v. Noske, 117 F.3d 1053, 1059 (8th Cir. 1997); Paulson v. Commissioner, 992 F.2d 789, 790 (8th Cir. 1993), affg. per curiam T.C. Memo. 1991-508. We generally do not recognize a trust for Federal tax purposes if the grantor keeps substantially unfettered powers of disposition or beneficial enjoyment of trust property. See United States v. Buttorff, 761 F.2d 1056, 1061 (5th Cir. 1985); Schulz v. Commissioner, 686 F.2d 490, 495 (7th Cir. 1982), affg. T.C. Memo. 1980-568; Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164.

Petitioners dealt with the alleged trust property as if it were their own. They did not change how they conducted their real estate and Oxyfresh businesses. They opened a checking account for Prindle. However, they alone had signature authority over that account. There is no evidence that anyone other than Mr. and Mrs. Fox had any access to any property that Prindle may have had.

Petitioners contend that Christopher Bates (Bates) was an independent trustee and that he controlled all aspects of Prindle. Petitioners contend that Mr. and Mrs. Fox did not have unfettered powers of disposition or beneficial enjoyment because they needed the concurrence of Bates for the Keyus Group (Keyus) (formerly known as the Joinder Group) to act with respect to

Prindle, and that Bates and Keyus participated in telephone meetings about Prindle, monitored Prindle's expenditures, and kept Prindle's records. Mrs. Fox testified that after she wrote a check on the Prindle account to K-Mart for clothes, Bates prevented her from using the Prindle account to pay it. She did not explain how Bates did that. She could not recall whether she repaid Prindle for those clothes. Mrs. Fox later testified that Bates allowed her to use the Prindle account to pay for clothes if they were going to a seminar. Petitioners offered no other examples of actions Bates or Keyus took with Prindle's income or property. Mr. Fox testified that neither Bates nor Keyus had any rights to any of Prindle's assets. We conclude that Bates did not control Prindle's purported assets.

2.   Prindle Lacked Economic Substance

A trust which has no economic substance is not recognized for Federal tax purposes. Zmuda v. Commissioner, 731 F.2d 1417, 1421 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Markosian v. Commissioner, 73 T.C. 1235, 1245 (1980); Furman v. Commissioner, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). Petitioners presented no credible evidence that they established Prindle for any reason other than tax avoidance.

Petitioners contend that Frank Lyon Co. v. United States, 435 U.S. 561 (1978), and Sacks v. Commissioner, 69 F.3d 982, 988 (9th Cir. 1995), revg. and remanding T.C. Memo. 1992-596, require us to recognize Prindle for Federal income tax purposes and

prevent respondent and the courts from reallocating income from Prindle to Mr. and Mrs. Fox. We disagree. In those cases, the courts found that a sale and leaseback of a building had economic substance. Frank Lyon Co. v. United States, supra at 577; Sacks v. Commissioner, supra at 988. In contrast, Prindle had no economic substance. Thus, Frank Lyon Co. and Sacks do not control here.

Petitioners contend that Prindle had economic substance because they intended to use it so that income Mr. Fox earned from Oxyfresh would pass to their children after petitioners died, citing Brooke v. United States, 468 F.2d 1155 (9th Cir. 1972). We disagree. Brooke differs from this case. In Brooke, the taxpayer transferred real estate to his children as a gift. The Montana State Probate Court appointed the taxpayer as their guardian. The children rented a pharmacy, apartment, and medical office to the taxpayer. The taxpayer used the rents to pay for the children's insurance, health, and education. The U.S. Court of Appeals for the Ninth Circuit found that the transfers to the children were not shams and that the children had to pay income tax on the rents. Id. at 1158.

We are not convinced by petitioners' argument because they have not shown that Oxyfresh would have made payments after Fox died. Mr. Fox's testimony on this point was contradictory. He said that the income stream would continue after he died. However, he also agreed with Mrs. Fox's testimony that he needed

to do certain things not stated in the record to receive payments from Oxyfresh, and he testified that his income from all Oxyfresh sales had stopped for a while because others performed better than he did. This suggests that income from Oxyfresh would not continue after he died.

Finally, the fact that petitioners thought they could use Prindle for estate planning[3] does not help them because the expectancy of such an advantage does not establish entitlement to an income tax advantage.

Petitioners contend that Mr. and Mrs. Fox's children are the beneficiaries of Prindle, but the record is unclear on this point. Some trust documents that Smith prepared and Mr. and Mrs. Fox signed stated that Mr. and Mrs. Fox were Prindle's beneficiaries, while others indicated that Mr. and Mrs. Fox's children were beneficiaries.

Prindle did not file income tax returns to report income that Mr. and Mrs. Fox deposited in the Prindle account from Oxyfresh and the real estate business. Petitioners' position that Prindle was not a sham is undermined by the fact that Mr. and Mrs. Fox did not treat Prindle as if it were a taxpayer. Also, there is no evidence that Mr. and Mrs. Fox filed gift tax returns reporting the alleged transfer of property to Prindle. Sec. 2501.

---

[3]It is not clear whether they meant to avoid probate, estate tax, or inheritance tax.

3.    Petitioners' Other Contentions

Petitioners contend that we should recognize Prindle for Federal tax purposes because the State of Washington and Oxyfresh recognized it as valid.  We disagree.  We need not recognize an entity for Federal tax purposes even if it is recognized under State law.  Neely v. United States, 775 F.2d 1092 (9th Cir. 1985); Zmuda v. Commissioner, 79 T.C. at 720.

Petitioners contend that respondent may not rely on the presumption of correctness because respondent did not call any witnesses or introduce any evidence.  We disagree.  Respondent's determination is presumed to be correct unless petitioners show that it is arbitrary.  Petitioners do not contend that respondent's determination about Prindle is arbitrary.

4.    Conclusion

We conclude that Mr. and Mrs. Fox kept substantially unfettered powers of disposition and beneficial enjoyment of trust property, the Prindle arrangement was a sham and had no economic substance, and Mr. and Mrs. Fox formed Prindle to avoid tax.  We do not recognize Prindle for Federal tax purposes.

Thus, the income in question from Mr. and Mrs. Fox's real estate and Oxyfresh activities is gross income to Mr. and Mrs. Fox and not to Prindle during the years in issue, and Prindle need not file Federal income tax returns for 1992 and 1993.[4]  It

---

[4] In light of our decision, we need not decide respondent's
(continued...)

follows that Prindle is not liable for the addition to tax for failure to file tax returns under section 6651 for 1992 and 1993.

C.   Welfare Benefit Plan Deduction

Petitioners contend that they may deduct $100,000 as their contribution to a qualified welfare benefit fund under section 419(a) and (g)(1) for 1992.  We disagree.

A welfare benefit fund is any fund which is part of a plan of an employer through which the employer provides benefits to employees or their beneficiaries.  Sec. 419(e).  If the requirements of section 162 or section 212 are otherwise met, a taxpayer employer may deduct contributions to a welfare benefit fund in the year in which the taxpayer employer paid the contributions to the extent of the welfare benefit fund's qualified cost for that year.  Sec. 419(b).

Petitioners have not convinced us that they paid $100,000, or any other amount, to a qualified welfare benefit fund in 1992. Mr. Fox testified that he sent a certified cashier's check for $15,000 to Employers Trust 2000.  He testified that he sent

---

[4](...continued)
other contentions that Prindle is not a valid trust under Washington State law because of insufficient evidence showing that Mr. and Mrs. Fox actually transferred assets to Prindle or that Prindle is a grantor trust which should be taxed as a corporation if it an otherwise valid entity.  We also need not decide petitioners' contention that the Oxyfresh income stream is assignable, because even if it were, Prindle is not recognized for Federal tax purposes.

$22,500 in 1992 and $28,200 in 1993.  There is no documentary evidence to corroborate this testimony.

Petitioners cite two documents:  "QNC Contribution Instructions", which Mr. Fox signed on December 30, 1992, states:  "Contribution amount $100,000"; and "Collateralized Personal Line of Credit Instructions", which Mr. Fox signed on December 30, 1992, states:  "Amount to be wired $85,000".  These documents do not show that petitioners paid $100,000 in 1992 or at any time.

We conclude that petitioners may not deduct $100,000 in 1992 under section 419.

D.   Whether Mr. and Mrs. Fox Had $2,237 in Unreported Interest Income

Respondent determined and contends that Mr. and Mrs. Fox had $2,237 in unreported interest income from Oxyfresh in 1993. Neither party offered any evidence on this issue.  Petitioners contend that respondent has the burden of producing evidence linking them to the unreported income, Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), revg. 67 T.C. 672 (1977), and that respondent failed to do so.  We agree with petitioners.

The U.S. Court of Appeals for the Ninth Circuit, the circuit in which this case is appealable, requires the Commissioner to introduce some substantive evidence that shows that the taxpayer received unreported income.  United States v. Zolla, 724 F.2d 808 (9th Cir. 1984); Weimerskirch v. Commissioner, supra.  Oxyfresh

paid compensation to Mr. Fox, but there is no evidence that Oxyfresh paid any interest to Mr. Fox or to Prindle. Respondent has failed to show any link between petitioners and any interest income. We do not sustain respondent's determination that Mr. and Mrs. Fox received $2,237 in unreported interest income from Oxyfresh in 1993. See Sanders v. Commissioner, T.C. Memo. 1997-452.

E.    Self-Employment Tax

Respondent determined and contends that Mr. and Mrs. Fox are liable for self-employment tax of $10,658 for 1992 and $11,057 for 1993 for payments from Oxyfresh. Section 1401(a) imposes a tax on self-employment income. Self-employment income is the net earnings derived by a person from any trade or business carried on by that person. Sec. 1402(a) and (b).

Mr. Fox earned income from Oxyfresh by selling Oxyfresh products, recruiting distributors, and conducting motivational workshops 3 weeks per month. Before the years in issue, Mr. Fox treated his income from Oxyfresh as self-employment income. He did not substantially change the manner in which he conducted his work for Oxyfresh after Smith formed Prindle. Thus, those payments are subject to self-employment tax. Sec. 1402(a).

Petitioners contend that Mr. Fox had no self-employment income if we recognize Prindle as a trust for Federal tax purposes. However, we do not recognize Prindle as a trust for Federal tax purposes for reasons stated in paragraph B, above.

Petitioners contend that the Oxyfresh payments to Prindle or to Mr. Fox are passive income because they were a percentage of all Oxyfresh company sales, not only sales from distributors that he recruited. We disagree. The payments from Oxyfresh were not passive income because Mr. Fox's activities to earn them were not passive. Mr. Fox had to work for Oxyfresh to receive payments from Oxyfresh. Mr. Fox owned Oxyfresh stock, but petitioners do not contend that the payments from Oxyfresh were dividends.

Petitioners contend that the Oxyfresh payments are not self-employment income because they would continue even after Mr. Fox died. For reasons stated in paragraph B-2, we are not convinced that Oxyfresh would continue to make payments after Mr. Fox died.

Petitioners rely on Gump v. United States, 86 F.3d 1126, 1128 (Fed. Cir. 1996), in which the U.S. Court of Appeals for the Federal Circuit held that payments from Nationwide Mutual Insurance Co.'s Agency Security Compensation Plan to a retired independent agent who sold Nationwide policies were not subject to self-employment tax. In Gump, the Government contended that the payments were part of the taxpayer's compensation for selling insurance. Id. The Court of Appeals disagreed and held that payments were made to cancel the payor's business relationship with the taxpayer. Id. The Court of Appeals held that the payments to cancel the business relationship were not self-employment income. Id. Oxyfresh did not pay Mr. Fox or Prindle

to cancel their business relationship. Thus, Gump differs from this case.

We conclude that Mr. and Mrs. Fox are liable for self-employment tax of $10,658 for 1992 and $11,057 for 1993.

F. <u>Whether Mr. and Mrs. Fox Are Liable for the Addition to Tax for Failure To File for 1993 and the Accuracy-Related Penalty for 1989, 1992, and 1993</u>

Respondent determined and contends that Mr. and Mrs. Fox are liable for the addition to tax for failure to file an income tax return for 1993 under section 6651(a) and the accuracy-related penalty for 1989, 1992, and 1993 under section 6662(a) for negligence.

1. <u>Section 6651(a)(1)</u>

A taxpayer is liable for an addition to tax of up to 25 percent for failure to file timely Federal income tax returns unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1); <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985); <u>Davis v. Commissioner</u>, 81 T.C. 806, 820 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985).

2. <u>Section 6662(a)</u>

Taxpayers are liable for a penalty under section 6662 equal to 20 percent of the part of the underpayment which is attributable to negligence. Sec. 6662(a). For purposes of section 6662(a), negligence is a failure to reasonably attempt to comply with the Internal Revenue Code. Sec. 6662(c). The

accuracy-related penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part of the underpayment and that the taxpayer acted in good faith based on the facts and circumstances.  Sec. 6664(c)(1).

3.  Reliance on Professional Advice

A taxpayer may establish that he or she had reasonable cause for failure to file a timely return, and was not negligent under section 6662(a), by proving that he or she reasonably relied in good faith on the advice of a competent, independent expert or tax professional possessed of all the information.  See United States v. Boyle, supra at 250; Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir. 1969), affg. T.C. Memo. 1968-98; Ewing v. Commissioner, 91 T.C. 396, 423 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Estate of Paxton v. Commissioner, 86 T.C. 785, 820 (1986); Jackson v. Commissioner, 86 T.C. 492, 538-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Georgia Ketteman Trust v. Commissioner, 86 T.C. 91, 108 (1986).   Petitioners contend that they are not liable under section 6651(a)(1) or section 6662(a) on the grounds that Mr. and Mrs. Fox relied on competent advice.  We disagree.  Mr. Fox spoke with Giboney, Mrs. Fox's uncle who is an attorney, about possible forms for their Oxyfresh business.  Giboney said that a trust sounded fine to him.  Petitioners did not call Giboney as a witness.  We do not know his expertise.  Dunn said that Mr. Fox

could operate his Oxyfresh business as a trust. However, it is not clear whether Dunn reviewed the trust documents that Smith prepared. Mr. Fox testified that he did not give Dunn any information regarding the trust. Mr. Fox did not rely on Dunn in good faith because he kept information from him. Dunn attended the trial but did not testify. We may draw an unfavorable inference from his failure to testify for petitioners. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners contend that we may not draw an adverse inference from Dunn's failure to testify because the "uncalled witness rule" does not apply in Federal court. We disagree. The U.S. Court of Appeals for the Ninth Circuit applied the adverse inference rule of Wichita Terminal Elevator Co. v. Commissioner, supra, in McKay v. Commissioner, 886 F.2d 1237, 1238-1239 (9th Cir. 1989), affg. 89 T.C. 1063 (1987).

Mr. Fox testified that he asked an unidentified attorney who specialized in trusts about which form he should use for his Oxyfresh business. Mr. Fox testified that the attorney's conclusion was the same as that of Giboney and Dunn. We do not know the expertise of the people on whom petitioners claim to have relied, and we do not know specifically what their opinion was.

4. <u>Conclusion</u>

We conclude that Mr. and Mrs. Fox are liable for the addition to tax for failure to file a return for 1993 under section 6651(a) and the accuracy-related penalty for 1989, 1992, and 1993 under section 6662(a) for negligence.

To reflect the foregoing,

<u>Decision will be entered for petitioner in docket No. 5907-96 and under Rule 155 in docket No. 7178-96</u>.